## SUSQUEHANNA BRIDGE AND BANK COMPANY, and others, *vs.* THE GENERAL INSURANCE Co.

The power of a corporation to secure debts, due by it, by mortgage, is a necessary incident to the power to borrow, and its exercise can only be restrained by express inhibition in the charter.

The act of 1814, ch. 66, sec. 15, expressly authorises the Susquehanna Bridge and Banking Company to deal in mortgages.

Where the seal of a corporation is affixed by the proper officer or agent of the company, proof of it is unnecessary.

Persons acting publicly as the officers of a corporation are presumed to be rightfully in office, and in the absence of proof on the subject, it is not incumbent on the party claiming under the acts of an officer, *de facto*, to show that he has been properly elected.

APPEAL from the Court of Chancery.

The bill in this case was filed by the appellee for the sale of certain real estate, mortgaged to it by the Susquehanna Bridge and Bank Company, by deed, dated the 21st of February 1834, to secure the sum of $10,000, due and owing to the appellee. Charles F. Mayer and others, receivers, appointed by the court of chancery to take charge of the effects of the Bridge and Bank Company, were also made defendants.

The answers of the receivers aver, that they know nothing and admit and deny nothing of the matters alleged, except

that they have never paid any part of the mortgage debt claimed. The president and directors of Bridge and Bank Company, by their answer, under the corporate seal of the company, deny that they were ever indebted, and also the execution of the mortgage in controversy.

The original mortgage was filed with the bill and with the commission, and purports, upon its face, to be executed by William H. Freeman, president, under the corporate seal of said company, and acknowledged by the same officer before two justices of the city of Baltimore, and recorded in Cecil county where the land was situated, and contains a covenant on the part of the mortgagor to pay the money. One of the justices proves, that it was acknowledged before him and the other justices by Freeman, as the president of said company. Another witness proves, that it was drawn by him about the time of its date at the request of Freeman, who was then president of said company; that it was taken to Freeman, who handed witness the seal of the corporation, that an impression thereof might be affixed to the deed; that it was so affixed and the deed was then signed by said Freeman, as president. Upon cross-examination this witness stated, that he is not and was not, at the time, acquainted with the seal of said corporation, and that he did not know that the seal affixed was its seal, from any other source of information, than that he knew that Freeman was its president, and that witness applied to him for the seal of the corporation when the seal, by which the impression, was affixed to the deed, was handed to him by Freeman, and that coming from such a source he had no reason to doubt that it was the seal of the corporation. That this took place in the city of Baltimore, at the banking house of said corporation in that city.

The defendants excepted to the admissibility of the mortgage in evidence, because, 1st. There is no proof that the seal affixed is the seal of the corporation, or that it was acknowledged or recorded as by law required, or was authorised by the stockholders or directors to be executed; 2nd. Freeman's declarations or actions, implying that the seal was the corporate seal, are no proof that it was, and his direction to draw and

his signing and sealing it afford no evidence that the corporation authorised its execution; 3rd. It is not competent to prove by parol that Freeman was president; 4th. It is not shown, and is not true, that the president was keeper of the seal; 5th. There is no authority shown from the company to execute any mortgage of its property; 6th. There is no indebtedness on the part of the corporation proven; and 7th. Under the acts of Assembly relating to the corporation, its seal could only be in Cecil county and could only be affixed there.

The chancellor, (JOHNSON,) decreed the sale as prayed by the bill and the defendants appealed.

The cause was argued before LE GRAND, C. J., MASON and TUCK, J.

*Chas. F. Mayer* for the appellant.

1st. The first objection is, that the seal to the mortgage is not proved to be the seal of the corporation. This must be proved in the same way as the signature to a deed. 7 *Searg. and Rawle,* 318. 8 *Term Rep.,* 303. 10 *Johns.,* 387. Freeman should have been examined under oath as to the seal, and his declarations are inadmissible to prove it; they are mere hearsay.

2nd. It is not properly acknowledged. The act of 1715 makes no provision as to deeds by corporations. Corporations acknowledge by power of attorney. The act of 1821 requires them to act by attorney. Again, there is no evidence that Freeman was the president. This must be proved by written testimony, it cannot be done by parol.

The charter of the bank is the act of 1814, ch. 66, being a supplement to the act of 1808, ch. 111. The original act of 1812, ch. 143, incorporates the Bridge Co. The act of 1814, ch. 66, sec. 13, shows what real property it may hold, which is limited to a mere building for a banking house, and as a banking institution it could acquire no property. Every thing, therefore, rebuts the presumption that the seal was in the power of the president of the bank.

3rd. The rule of law of corporations in this country is, that their powers shall not be enlarged by implication. They must be strictly construed. There is no power in this corporation to take real estate, or to hold or dispose of it.

*S. Teackle Wallis* for the appellee.

The act of 1812, ch. 143, incorporates the Bridge Co., and the act of 1808, ch. 111, therein referred to, gives the company all corporate powers. The act of 1814, ch. 66, first gave it banking powers, and authorised it to contract debts, by bond, bill, or any other form of contract, to double the amount of its capital. This mortgage was made in pursuance of this power. It had the power to contract debts, and of course to secure them. The original mortgage is here given in evidence, and it is admitted that the answer, being under the corporate seal, has only the effect that the answer of an individual, without oath, would have; that is, it only traverses the fact. 8 *Gill*, 170.

The mortgage was drawn at the request of Freeman, who handed the witness the seal to make the impression. This was done at the banking house of the corporation, in the city of Baltimore, and the deed was recorded in the county where the land lay.

The corporation held out Freeman as their agent, authorised him to borrow money, and they cannot now repudiate his act any more than an individual could. 2 *Gill*, 287. *Burges vs. Pue. Angel and Ames on Corp.*, 270. 6 *Paige*, 60. 21 *Pick.*, 428. 24 *Eng. C. L. Rep.*, 67. *Angel and Ames on Corp.*, 194, 195.

These authorities show that where the seal of a corporation is affixed by the proper officer, it is *prima facie* evidence that the seal was the seal of the corporation.

As to the acknowledgment. 1st. There is no one claiming adversely, and it matters not in equity whether the mortgage were properly executed or not, it is at least a pledge under seal. But the act of 1821 only says, a corporation *may* authorise an attorney to act for it, not that they *shall*. The

proposition on the other side would lead to the result that a corporation could not, until 1821, execute a deed binding real estate. But this is not so. Corporations are capable of making all kinds of deeds. *Angel and Ames on Corp.*, 188, 194. But suppose this to be so. This act could not prevent the parties from making a mortgage that would be recognised in *equity.*

*Thos. G. Pratt* on the same side.

The answer of the bank company discloses the only points in the case. 1st. They deny indebtedness; and 2nd. They deny the execution of the mortgagee. The complainants filed the original mortgage, and not a certified copy. This contains a covenant for the payment of the money; there is no note or other writing from which the indebtedness is shown.

The answer is not under oath, but only under its *seal.* See 8 *Gill*, 174, for the effect of such an answer.

2nd. The mortgage was properly executed. The first objection is, that they had not the power to execute it. The act of 1814, ch, 66, sec. 15, expressly gives the corporations power to deal in mortgages. 1816, ch, 175, sec. 4, gives the authority to appoint its officers, and legalises their acts.

The act of 1821, ch. 226, gives a corporation the privilege to acknowlege its deeds in two modes, which before that time it could not do. 1st. By a power of attorney in the deed; and 2nd, by a power extraneous. This act makes deeds so executed as valid as deeds executed by individuals. It does not, therefore, take away the power they had before, but only gives them additional powers. Acts of officers of a corporation are presumed to be valid, for the law will not sanction the fraud of a corporation sooner than that of an individual. *Angel and Ames on Corp.*, 270. Unless restricted by its charter a corporation may execute deeds in the same way as individuals. 6 *G. & J.*, 219. 1 *H. & G.*, 436. 2 *Gill*, 287. An answer, not under oath, would not be sufficient to enable the court to dissolve an injunction. 6 *Gill*, 381.

*Mayer* in reply.

We admit that the answer of the corporation has not the effect as *evidence* that an answer of an individual under oath has. But surely it puts the complainant on proof; it raises the issue on every point which the answer denies. The only way for a corporation to answer is under seal. The proposition on the other side would make the allegations of the bills in all cases against corporations to be taken for true.

The oath of the officers was not called for by the bill, nor were they made parties to the bill. Again, the bill itself calls to the notice of the court the insolvent condition of the corporation, and of course involving the rights of creditors.

It does not appear that this was a mortgage taken at the time the money was loaned. There is no power given by the charter to borrow money, and even if it was, such power does not include the power to mortgage property, and especially real estate. The power to deal in mortgages means only the power to purchase and take a mortgage, to lend money on mortgages, and not to execute and give a preference in the form of a mortgage. 1 *Watts*, 385. 5 *Wend.*, 590. There is no such principle, that the power of mortgaging is implied, because it is not expressly denied. The contrary is expressly the rule of law in this country. 4 *Pet.*, 168. 13 *Pet.*, 587. There is a distinction between corporations at the old common law and modern corporations created by charters. Chartered powers are to be strictly construed. 3 *Wend.*, 482. 7 *Wend.*, 31. 2 *Cowen*, 678. The act of 1808, ch. 108, sec. 11, dedicates the property to the stockholders as *cestui que trusts*. The act of 1814, ch. 66, gives a locality to the bank as near as may be to the bridge. The 8th clause of the 5th sec. makes the capital stock answerable for its debts. The charter, in fact, gives them no authority to borrow money.

2. There is no proof that this was the seal of the corporation. There is nothing to show that the president was the keeper of the seal. Again, there is no proof that Freeman was the president of the defendant. Written proof is the proper proof of the appointment of officers. 12 *Wheat.*, 68,

70, 97. It is only in case of persons openly acting as officers of corporations that they are presumed to be such. Where is the evidence that Freeman was thus openly acting? There is no such proof. He merely goes to the office in Baltimore and hands out a seal which he calls the seal of the corporation. The appropriate depository of the seal was in Cecil county.

But this is no deed for the passing of real estate. It is not properly acknowledged, and is therefore *ipso facto* void. It is a conceded principle of the common law, that corporations act only by attorneys. There is nothing to show that Freeman was the attorney to acknowledge this deed.

LE GRAND, C. J., delivered the opinion of this court.

The decree in this case is unaccompanied by an opinion of the chancellor, and we are, therefore, not apprised of the reasons which induced him to sign it.

The reversal of the decree is asked on several grounds, none of which, in our judgment, are tenable. It is objected that the appellant had no right to give the mortgage. This objection is answered by the fifteenth section of the act of 1814, chapter 66, which expressly authorises the corporation to deal in mortgages. But, independently of this, we are of the opinion it would have been competent to the corporation to have secured, by mortgage, a debt due by it; such power is necessarily incident to the power to borrow, and its exercise could only be restrained by express inhibition in the act of incorporation.

It is contended there was no proof of the seal of the corporation. This is unnecessary when it is affixed by the proper officer or agent of the company. *Angel and Ames on Corporations*, 195, *sec.* 7. But, it is said, there is no proof that Freeman, who professed to be the president, was so in fact. The evidence shows he held himself out to the world as such, and was dealt with accordingly by the community. If he were not in point of fact the president, the corporation owed it to the community to give notice of the fact. To allow a

person publicly to proclaim himself authorised to act in a certain capacity, and to seek to avoid his acts when such avoidance would work to the advantage of the corporation, would be, but to authorise the perpetration of frauds on an unsuspecting community. It is nowhere denied, in any of the answers, that Freeman was the president at the time of the execution of the mortgage; and it has been held by the Court of Appeals, in the case of *Burgess vs. Pue*, 2 *Gill*, 287, that persons acting publicly, as officers of a corporation, are presumed to be rightfully in office, and that, in the absence of proof on the subject, it is not incumbent on the party claiming under the acts of an officer *de facto,* to show that he has been properly elected.

