Dunham v. Isett.

---

## DUNHAM v. ISETT *et al.*

1. PLEADING: ALLEGATIONS. An allegation in a petition that railroad bonds have been "issued," and that they have been "issued and sold," is equivalent to an allegation that they have been negotiated and are in the hands of third parties.

2. INJUNCTION: REVENUES OF A RAILROAD COMPANY. When the property and revenues of a railroad company are pledged by mortgage to secure the payment of certain outstanding bonds, and the earnings of the road are insufficient to discharge the interest as it accrues thereon, the revenues so pledged are not subject to attachment or execution by the other judgment creditors of the corporation; and an attachment or execution of the same will be restrained by injunction on application to a court of equity.

3. MORTGAGE OF RAILROAD. A mortgage of the property and revenues of a railroad company contained the following proviso: "All of the rights of the bond holders or trustees are subject to the possession, control and

management of the directors of said company, until default," &c. *Held*, that this proviso did not give the creditors of the corporation under contracts made before default, but after the execution of the mortgage, a preference over the mortgage liens.

4. SAME: POWER TO EXECUTE MORTGAGES. Chapter 43 of the Code of 1851, conferred upon railroad corporations organized under its provisions, the power to encumber their real and personal property, such as lands held for right of way, depot buildings, rolling stock, revenues, and the like, including the future earnings, accessions and acquisitions of their respective roads. *Quære:* Whether the franchise of a railroad corporation may be pledged by mortgage?

5. STATUTE. *Semble*, that chapter 182 of the Laws of 1857, (act of January 28th,) was retro-active in its operations and applied to mortgages and deeds of trust executed before its enactment.

*Appeal from Muscatine District Court.*

WEDNESDAY, DECEMBER 9.

COMPLAINANT, by his bill, represents that on or about the first days of July, 1855 and 1856, " The Mississippi & Missouri River Railroad Company, a corporation created under the laws of this State, was largely indebted, and desired to raise money to aid in constructing and equipping a railroad; that for the purpose of raising means they issued bonds to the amount of near four millions of dollars, and to secure the same, executed to complainant, as trustee, certain mortgages or trust deeds, on the following property; the said railroad constructed and to be constructed, together with all and singular the railway lands procured or occupied for right of way, together with bridges, fences, privileges, rights and real estate owned by said Company, or which shall hereafter be owned by them, and all the *tolls, incomes, issues* and *profits* to be had from the same, and all the lands used and occupied for depots or stations, with all the buildings standing thereon, or which shall be procured therefor, together with all the locomotives, engines and tenders, passenger cars and freight cars, shops, tools and

machinery, including all the property of the Company, real and personal, and all the rights, credits and 'franchises of said Company." It is also shown, that these trust deeds were duly recorded in September, 1855, December, 1856, and January, 1857; that the gross earnings of the road have not been sufficient to pay the ordinary operating expenses, keep the road in repair and pay the interest on the outstanding bonds; that there is due and unpaid interest on said bonds to the amount of over four hundred thousand dollars, and for operating expenses, about twenty-six thousand dollars.

The bill also shows that in October, 1861, the respondent Isett, obtained a judgment against the Company for near $3,000, that he caused execution to issue thereon, and certain persons in the employ of the Company, and others indebted for freight to be garnished.

Complainant insists that as such trustee he has the first and paramount lien on all the property of the Company, including tolls, incomes and earnings; that the same is not subject to execution or garnishment, until said bonds, including principal and interest are paid, and prays for an injunction.

After argument the injunction was granted. Respondent (Isett) answered and filed his motion to dissolve. This was overruled, to which he excepted, and from that order now appeals.

*D. C. Cloud* for the appellant.

I. The demurrer to the petition should have been sustained, and this court should sustain it and dismiss plaintiff's bill:

1st. Because there is no averment in the petition that said deeds of trust were made in pursuance of any statute of the State of Iowa, or any authority derived from any action of the proper authorities; nor is any record autho-

rizing such deeds or the issue of said bonds by the directors of said Railroad Company, set out in said petition, nor is the same referred to.

2d. Said petition shows upon its face that plaintiff has a full, adequate and complete remedy at law. An action at law can be maintained against said defendant, Isett, and Sheriff Gordon; if they are trespassers they must respond in damages. There is no averment that any of said defendants are insolvent, or unable to respond in damages, nor is there any averment that this suit is brought to prevent a multiplicity of actions.

3d. Because the petition does not allege that said defendants have in any manner disturbed plaintiff in the enjoyment of his property; nor does it aver that defendants have disturbed said Railroad Company in their pursuits or possessions, further than to garnish their credits in the hands of third persons, and this I claim defendants had a perfect right to do, there being no stipulation in said deeds of trust, or in the statute giving said plaintiff, as trustee, any right to claim said moneys, or any of the property conveyed until default made; and until such claim is made said trustee cannot be a party to any suit against defendants, for reason that said deeds of trust leave the whole matter in the hands of the Railroad Company until default "and demand of the interest, and a lapse of sixty days, and then upon request of the holder of one of said bonds," &c., he shall take possession. None of these matters being averred in said petition, plaintiff is not in the position to ask the relief he is now seeking.

II. The deeds of trust under which plaintiff seeks to claim said moneys and to assert his claim, are made without authority and are absolutely void. *Pierce* v. *Emery*, 32 N. H., 507, and the cases cited on page 508; Shelford on Railways, 155 (marg.); *Pennie* v. *The Delaware and Chesa-*

*peake Canal Company,* 9 How., 172; *Lippetts* v. *Walker et al.,* 4 Mass., 596.

III. Our third point is, if the Company had no authority to mortgage their franchise, they could not make a conveyance of the tolls or earnings of their road. *Pierce* v. *Emery, supra; Phillips, &c.,* v. *Winslow, Trustee,* 18 B. Monr., 431; 3 Green Ch., 377; *In re Ship Wall,* 8 Price, 269; are cases under statutes conferring the power; *Wellesly* v. *Wellesly,* 4 Myl. & C., 560; and *Metcalf* v. *The Archbishop of York,* 6 Lcv., 224, are old cases, and have not been followed in this country; and *Pennock et al.* v. *Coe,* 23 How., 117; *Jones* v. *Richardson,* 10 Met., 481; *Howe* v. *Freeman,* 14 Gray, 566; do not hold that the right exists independently of the statute.

IV. If the grant must be made before a valid mortgage could be made, then, unless the giving of mortgages was confirmed by the Legislature, by some act in direct terms, no validity is given to them by the act passed before the execution of the mortgage made to Jessup in the Dubuque case. Sedgwick Stat. and Const. Law, 188.

V. Our next point is, that admitting the Railroad Company could mortgage for the purposes and upon the terms claimed in said petition, and that such mortgage would be good upon subsequently acquired property, yet the case as made by the petition, does not call for the aid of a Court of Equity.

*Cook & Drury* for the appellee argued: 1. In reply to appellant's first point, that the Court will take judicial notice of the law authorizing the act to be done, and it is not necessary to set it out in the petition: 2. In reply to the second proposition, that the power to execute deeds of trust is conferred by the statute, § 1151, Rev. of 1860, which is but a reprint of § 674, Code of 1851; *Jordan* v. *Posten,* 1 Watts., 385; *Porter* v. *Green,* 4 Iowa, 571; *Hall et al.,*

*Trustees,* v. *Sullivan Railway,* Redfield on Railways, 578, note; *Leary* v. *Stubbs,* 12 Ga., 437 ; 3 Dutch., 185: 3. That independent of any statutory provisions, a *corporation created for Railroad purposes may issue bonds and mortgages, and they will be valid and binding; *McCollough* v. *The State of Maryland,* 4 Wheat., 316 ; Ang. & Ames Corp., 253 and 256 ; *The Attorney-General* v. *Life and Fire Insurance Company,* 9 Paige Ch., 470 ; *Moss* v. *Oakley,* 2 Hill, 265 ; *Kelly* v. *The Mayor of Brooklyn,* 4 Id., 263 ; *Union Bank* v. *Jacobs,* 6 Humphrey, 515; *Allen* v. *The Montgomery Railroad Company,* 11 Ala., 437 ; 15 Id., 491: 4. In reply to the third point, that the Railroad Company had the power to mortgage both the franchise and the toll and earnings of their road; *Jessup et al.* v. *Budge, Trustee,* 11 Iowa, 573 ; *Pennock et al.* v. *Coe,* 23 How., 117; *Galena & Chicago Union Railroad Company, Garnishee,* v. *Menzies,* 26 Id., 121.

WRIGHT, J.—The motion to dissolve the injunction was based upon two general grounds: 1. That there is no equity in the bill: 2. That the Company had no authority to make the trust deeds.    Under these general propositions appellant's counsel has presented several questions for our consideration, which will be briefly noticed:

1. It is claimed that it does not appear that the bonds attempted to be secured by the deeds of trust, have been sold or hypothecated.    The bill avers that the Company was desirous to obtain large sums of money for the purpose of constructing, &c., a certain Railroad then in the course of construction from, &c., that for this purpose the said Company issued their certain bonds, each for the sum of one thousand dollars, amounting in the aggregate to three millions and nine hundred and ninety thousand dollars, drawing interest at the rates of seven and eight per cent, payable semi-annually; that to secure the payment

of these bonds and make them current in market, the company by its legally constituted officers and in pursuance of law, executed and delivered to complainant, as trustee, their certain mortgages, " by which they granted, transferred and conveyed," &c. It is then particularly averred that on the 1st day of July, 1855, there was issued bonds, known as construction bonds, to the amount of $1,990,-000 ; and that there has been issued and sold $2,000,000 of land grant bonds, and that there is now due and unpaid on interest coupons on said bonds about the sum of $418,-309 ; that none of the principal and but a portion of the interest has been paid. What more could be legally required of the pleader than has been averred in this instance, it is difficult to imagine. It is stated that these bonds were "issued;" that they were "issued and sold;" in other words, that they were sent out and delivered for circulation; that there is now due and unpaid on the interest coupons over $400,000. How these averments could be true, and the bonds still remain in the hands of the treasurer or other officer of the Company for negotiation or hypothecation, we cannot conceive. The word " issued " is that employed in all the cases, when speaking of similar bonds after their negotiation, after they have passed to third parties, and its meaning is well understood. To use other or different language is not required of the pleader. In this connection we remark, also, that there is no such negation of the existence or negotiation of these bonds in the respondent's answer, as to authorize the Court, without further showing, to dissolve the injunction.

2. It is also claimed that complainant has a full and adequate remedy at law; that an action at law could be maintained against Isett and the Sheriff; that their insolvency is not averred and it is not shown that the action is brought to avoid a multiplicity of suits. Assuming for the present the validity of the mortgages, we deem it very

clear that the revenues so pledged are not liable to attachment or execution by the judgment creditors of the corporation. *Galena & Chicago Union Railroad Company* v. *Menzies*, 26 Ill., 121. And while it is possible that equity might not interfere if complainant was merely seeking to obtain possession of some specific, tangible property of the Company, not for foreclosure but to take its profits; the case is very different where he seeks protection and quiet in the possession of certain rights, incorporeal in their nature. And especially is this true when the nature of these rights, and their liability to frequent interruptions and infringements render the powers of a court of equity almost indispensable to their complete protection. See *Hale* v. *Sullivan Railway*, opinion of CURTIS, J., cited p. 582, Redf. on Railways. Says the Chancellor in *Croton Turnpike Company* v. *Ryder*, 1 John. Ch., 615: "The equity jurisdiction in such a case is extremely benign and salutary; without it the party would be exposed to constant and ruinous litigations, as well as to have his rights excessively impaired by frauds and evasion."

3. These mortgages contain a provision, as stated by appellant, in substance, that "all of the rights of the bondholders or trustee, are subject to the possession, control and management of the directors of said Company until default," &c. It is now claimed that this stipulation means that the directors have the right to make any and all contracts, and that when made before default, will be valid as against the trustee, giving the creditor a preference over the mortgage liens. This is not our understanding of this provision. So far as the mortgage relates to real property, the mortgagor would be entitled to the possession, control and management, until an entry for default or foreclosure as contemplated by the conveyance, without any such provision. And so far as it covers personal property, in the absence of some such stipulation, the legal title and right

of possession would have passed to the mortgagee. This clause, therefore, only provides for the ownership, possession and management of the property in a manner clearly recognized by our law. The lien of the mortgage is not affected thereby. Persons dealing with the Company, extending credit to it and the like, knew that this management and possession is subject to the incumbrances created by these mortgages, which may be enforced, if there is default in the payment of the bonds. If the question related to the right of a party purchasing some article of property covered by the mortgages, prior to the foreclosure or default, and while it was thus controlled and managed by the Company, it might involve different principles, and there would possibly be more plausibility in the argument of the appellant.

4. Finally, it is insisted that these mortgages were made without authority of law, and are absolutely void. Under this head it is argued that the power to make such instruments did not exist at common law, and has not been conferred by statute; that unless derived from some statute, the corporation could not encumber or transfer its franchise, and that if there was no authority to mortgage the franchise, the Company could not make a conveyance or create a lien upon the future tolls or earnings of the road. And in these propositions we have the points principally relied upon by appellant to reverse this case.

*Jessup et al., Trustees* v. *Bridge et al.*, 11 Iowa, 572, clearly and conclusively recognizes the right of a Railroad Company to mortgage its future net earnings to secure the prompt payment of interest accruing on its construction bonds. And when the authority is conferred by statute, there can be no question as to the correctness of this ruling, sustained, as it is, by the numerous well considered cases there cited. And see 2 Law Reg., N. S., 527, and the cases there referred to; *Morrell* v. *Noyes*, reported in 3 Id.,

18, and the note of Judge REDFIELD ; *Pennock* v. *Coe*, 23 How., 117 ; opinion of Judge CURTIS in *Hall* v. *Sullivan Railway*, *supra;* Redf. on Railw., § 235, and notes 19, 20.) But it is insisted, that while the mortgage in the case decided in 11 Iowa, may have been authorized by ch.,182, of the Laws of 1857, these mortgages were made before that time and are not sustained by any such statute.

These instruments recite that this corporation was organized under the provisions of ch. 43 of the Code, entitled : " Corporations for pecuniary profit." This chapter provides, that any number of persons may associate themselves and become incorporated for the transaction of any lawful business, including the establishment of ferries, the construction of railways, canals, or other works of internal improvement; " but such incorporation confers no power or privilege not possessed by natural persons, except as hereinafter provided." Among the powers conferred is that of making contracts, acquiring and transferring property, " possessing the same powers in such respects as private individuals now enjoy." By the Act of January 28, 1857, ch. 182, p. 278, it is declared that any mortgage or deed of trust made upon the lands, roads or property of any Company, shall bind and be a valid lien upon all the property mentioned therein, including rolling stock; and the purchaser, under a trustee's sale or foreclosure of mortgage, shall have and enjoy all the rights of a purchaser on execution sale. Since the Act of March 20th, 1858, ch. 85, p. 119, there can be no question as to the legislative authority upon this subject, for this statute expressly confers the power to make mortgages and execute deeds of trust upon the whole or any part of the property and franchises of the Company to secure money borrowed for the construction and equipment of the road, which may cover not only the property then owned, but

that to be acquired, the rolling stock and personal property being deemed a part of the road.

This last act cannot fairly be regarded as retrospective in its operation, and as the mortgages in the present case were made in 1855–6, they derive no validity from its provision. That of 1857 partakes more of the character of a curative or retrospective act, and, if necessary, we might with some confidence rely upon that as sustaining these mortgages. That it is competent for the Legislature to pass such retrospective acts we entertain no doubt.

But without stopping to discuss this feature of the case, we recur to the provisions of the Code of 1851, above cited. In holding these mortgages valid, in view of the powers possessed by incorporated bodies, organized under that general law, it is unnecessary to decide that they would have the power to mortgage, encumber or transfer their franchise, as well as real and personal property, including rolling stock and after-acquired tolls and incomes. For whether the corporate franchise can be transferred or mortgaged, when neither the charter nor the general laws of the State authorize it, is a question of much more difficulty than when the inquiry is restricted to the right to transfer or encumber the property of the Company — meaning by property in this connection, lands held for right of way, depot buildings, rolling stock, revenues and the like. In this connection we remark, that there seems to us great weight in the thought that the question whether the franchise may be conveyed is a matter between the State and the corporation, and with which third persons have nothing to do. The supposed inhibition rests upon grounds of public policy. Suppose the State waives the supposed forfeiture, or does not claim it, what right have creditors to insist upon it? Or suppose from the general law, as well as the general course of legislation, it is fairly inferable that the will of the Legislature, which as applied

to such a subject "constitutes the public policy of the State," tends to make operative such a transfer, shall the courts interfere and declare them invalid?

Keeping in view this distinction, we remark that we have only at present, to determine the validity of these mortgages, so far as they cover the tolls, incomes, issues and profits; or as applied to this particular case, the freights afterwards earned by the Company. As already suggested, we think the question is well settled, that if the corporation has power to execute a mortgage or conveyance, it may include therein the future accessions and acquisitions of the road. *Howe* v. *Freeman*, 14 Gray, 566; Pierce Am. R. R. Law, 531; *Holroyd* v. *Marshall*, 9 Jur. N. S., 213. By the law of its creation, this Company had the right to make contracts, to acquire and transfer property, in the same manner, and with like powers held and enjoyed by private individuals. And if a private individual could transfer or mortgage future accessions or acquisitions, or speaking with perhaps more critical accuracy, that which is the product of present property in the mortgagor, or potentially his, so may an incorporation organized under this law. Individuals have the right to buy or sell real estate. So they have the right to borrow money. Under this general law corporations have like powers. And the power to do these things—that is, to buy and sell, and to borrow money—imply, aside from the existence of any express power, the power to mortgage such property, to secure the payment of the loan. Mr. Redfield, Railways, 575, citing *Susquehanna Bridge Company* v. *General Insurance Company*, 3 Md., 305, says, that this is but an elementary principle in the law of corporations, and requires no labored citation of authorities to sustain it. And says SUTHERLAND, J., in *Jackson, ex dem. The People*, v. *Brown*, 5 Wend., 590, "It would be very extraordinary if this or any other corporation had not the power to appropriate its

property to the payment or security of its honest debts."
The power to make contracts, acquire, sell or transfer pro-
perty, implies the power to mortgage. *Gordon* v. *Preston*,
1 Watts, 385. And see *Union Bank* v. *Jacobs*, 6 Humph.,
515 ; Angell & Ames on Corporations, § 271 ; Redf., 574,
575, and notes.

Affirmed.