SCHARFENBURG v. BISHOP, sheriff, *et al.*

1. Acknowledgment: SUFFICIENCY OF. Acknowledgment in the following form: "Be it remembered that on the 7th day of December, 1869, before me, a notary public in and for said county, personally F. A. Meurer, to me personally known to be the identical person whose name is affixed to the foregoing mortgage as mortgagor, and acknowledged the same to be his voluntary act and deed." *Held*, 1. That the omission of the word "appeared" was manifestly a clerical error, and not fatal to the validity of the mortgage; 2. But if it were, it was cured by the act of April 28, 1870, Laws of 1870, chap. 160, as against attaching creditors of the vendee.

2. Deposition SUPPRESSION OF. The defendants were notified that the plaintiff would, on a certain day between the hours of nine o'clock A. M. and six o'clock P. M., take the deposition of a certain person.

The deposition was taken between nine and eleven o'clock. At about the latter hour, and after the notary and witnesses had left, the attorney for defendant appeared and desired to cross-examine the witness. Efforts were made by the plaintiff's attorney and the notary to have the witness returned for cross-examination, but he failed to do so. *Held,* in the absence of any showing of fraud, that the deposition should not be suppressed.

3. Mortgage: OF AFTER-ACQUIRED CHATTELS. It *seems* that a mortgage of chattels may be made to cover future acquisitions, and that the rights of the mortgagee therein will be enforced against all persons having notice.

### *Appeal from Lee Circuit Court.*

### WEDNESDAY, SEPTEMBER 18.

ACTION in replevin for the stock, fixtures, etc., in a .eather business in Keokuk, of which the plaintiff claimed to be the absolute owner. The original defendant, who was the sheriff, denied the plaintiff's allegations and claim, and set up a paramount lien and right under a writ of attachment and levy in favor of Page, Bro. & Co., against one F. A. Meurer, under whom the plaintiff claims. The attachment creditors were afterward made defendants. Upon a jury trial there was a verdict and judgment for plaintiff. The defendants appeal.

*Gillmore & Anderson* for the appellants.

*W. B. Collins* for the appellee.

COLE, J. — I. After the jury was impaneled, and the trial commenced, the plaintiff offered in evidence the orig-

1. ACKNOWL-
EDGMENT: suf-
ficiency of.
inal mortgage made by F. A. Meurer to him of the property in controversy. The acknowledgment was as follows :

"Be it remembered that on the 7th day of December, 1869, before me, a notary public in and for said county,

personally         F. A. Meurer, to me personally known to be the identical person whose name is affixed to the foregoing mortgage as mortgagor, and acknowledged the same to be his voluntary act and deed."

The mortgage had been recorded. The defendants objected to the introduction of the mortgage in evidence, for the reason that neither the instrument nor the record offered in evidence conveyed to defendants, the attaching creditors, any notice that any mortgage had been given on the stock levied upon by the attachment in this case. The court overruled the objection and admitted the evidence; and this ruling is the first error assigned.

The objection, as we understand it, is grounded upon the omission from the certificate of the word "appeared," preceding the name of the party acknowledging the instrument. It is worthy of note that the statute, in terms, does not require that the certificate shall set forth that the person making the acknowledgment did personally appear before the officer. Rev., § 2227. Of course, the fact would be necessary in order to take the acknowledgment, but the statute does not expressly require that such fact shall be set forth in the certificate. But see the construction of the statute, per BALDWIN, J., in *Bell* v. *Evans*, 10 Iowa, 358. The omission of the word "appeared" from the certificate in this case was manifestly a mere clerical error. But, even if the omission was fatal as to the then validity of the acknowledgment, it has been cured by the act of April 28, 1870 (Laws of 1870, chap. 160, p. 201). Defendants at that time had no interest in the property. *Brinton* v. *Seevers*, 12 Iowa, 393. And, further than this, the original mortgage would be competent evidence although not acknowledged or recorded. This has been too often held to now require reference to cases. Of course, third persons would not be affected by it except upon proof of notice to them of its existence. But the

right to introduce the mortgage as evidence, and then to follow it with proof of notice, cannot be questioned.

II. The defendants were duly notified that the plaintiff would, " on the 27th February, 1871, between the hours of nine o'clock in the forenoon and six o'clock in the afternoon," etc., take the deposition of

2. DEPOSITION: suppression of.

F. A. Meurer to to be read as evidence. The deposition was accordingly taken and completed between nine and eleven o'clock. About the latter hour, and after the notary and witness had left, one of the attorneys for the defendants appeared and desired to cross-examine the witness. Efforts were made by plaintiff's attorney and the notary to procure the witness, and he promised to return for cross-examination, but failed to do so. The witness shortly after died. A motion was made to suppress the deposition upon these facts. There is no showing or claim of bad faith, or improper conduct, or evasion of cross-examination, by plaintiff's attorney or any one; nor is there any showing of what the defendants expected to prove by a cross-examination, nor that they could not or did not prove the same facts by other witnesses. In view of all this, we cannot say that the court erred in overruling the motion to suppress. The motion was not grounded upon the point now pressed in argument, to wit : That the notice to take the deposition was not served upon the attachment creditors, defendants. Indeed, it seems they were not made parties until after the deposition was taken.

III. The mortgage in controversy was made by F. A. Meurer to the plaintiff and was upon " all my stock and trade in the leather business in the city of Keokuk, consisting of the following goods, to wit :" (here follows a list of articles in detail, and following the list it concludes with,) " including any and all fixtures and stock now or hereafter kept in my said leather business in the city of Keokuk, Lee county, and State of Iowa," etc. It is also shown by the abstract that the evidence

3. MORTGAGE: after-acquired chattels.

tended to prove that the defendant, sheriff, in this action, at the request of this plaintiff and by virtue of and under the mortgage aforesaid, on the 31st day of January, 1871, took possession of all the mortgaged property, including that which had been added since the mortgage was made, for the purpose of selling the same to satisfy the mortgage; that after the sheriff had so seized the property, the plaintiff and the mortgagor agreed that the plaintiff should take the property and credit the mortgage debt with $1,153.94, its agreed value; and thereupon the sheriff turned the property over to the plaintiff as his own. Afterward the sheriff seized the same property in the plaintiff's hands under a writ of attachment procured by other creditors against the property of F. A. Meurer, the mortgagor. There was also evidence tending to show that plaintiff had loaned to Meurer $2,000 which was still unpaid except the credit above and which the mortgage was given to secure.

The defendant asked two instructions to the jury, embodying substantially the same proposition. One of them was as follows: "If you find that any portion of the property levied upon by the attachment in this case had been acquired by Meurer after the execution of the mortgage in controversy, as to such property the attachment would be the paramount claim, and as to such property you should find the right to possession to be in defendant." This was refused by the court, and rightly so, regardless of the question whether or not a mortgage may be made to cover after-acquired property. For the instruction entirely omits the further material fact, which the evidence in this case tended to show, to wit: that the plaintiff had taken actual possession of all the mortgaged property and acquired the complete title by purchase in part payment for his mortgage debt, before it was seized under the writ of attachment. If the jury should so find the fact, then, clearly, even as to the after-acquired property, the right to the possession would not be in defendant.

In the instruction given by the court, the jury were told directly that a mortgage may be made to operate as a ˙lien upon property subsequently acquired. We had occasion to examine this question in the case of *Allen* v. *McCalla*, 25 Iowa, 464 (*i. e.*), 486, but did not then expressly determine it. As was intimated in that case, the weight and number of authorities may be in opposition to the holding of the court below, but in our view they are not in accord with the equitable principle upon which the question rests.

The leading case in this country bearing upon the question, and holding that after-acquired property could not be mortgaged, is the case of *Jones* v. *Richardson*, 10 Metc. 481. That case was "decided according to the principles of the common law," as was said by WILDE, J., who wrote the opinion in it; while the case of *Mitchell* v. *Winslow* (2 Storey's R.), 630 "was decided on principles of equity." The elaborate review of the authorities made by WILDE, J., in the case, shows that it is made to turn upon technical common-law rules; and he draws a distinction between that case and others cited by him on this ground, especially the case above cited and *Fletcher* v. *Morey* (2 Storey's R. 555). See, also, *Abbott* v. *Goodwin*, 7 Shepley, 408. The same court afterward, in *Moody*. v. *Wright*, 13 Metc. 17 (*i. e.*), 29, recognized that decision as "involving the question as to the validity of such a mortgage in a court of law," but it also applied the same rule in the case then under examination, though it was a case in chancery, showing that there was no such equity in the case as would affect the technical legal rights of either party. These cases were followed in *Barnard* v. *Eaton*, 2 Cush. 294, and in *Codman* v. *Freeman*, 3 id. 306.

On the other hand, there are strong cases taking the opposite view. In *Langdon* v. *Horton*, 1 Har. (23 Eng. Ch. R.), 549, the Vice-Chancellor says: "It is impossible

to doubt, for some purposes at least, that by contract an interest in a thing not in existence at the time of the contract, may, in equity, become the property of a purchaser for value." He quotes Lord ELDON as having decided in the case of the ship "Warre" (8 Price, 269), and in *Curtis* v. *Auber* (1 J & W. 526), "that non-existing property may be the subject of valid assignment." The same view was taken in a very important case, *Seymour* v. *C. & N. F. R. Co.* 25 Barb. (S. C. R.) 284, where the counsel seem to have collected all the authorities bearing upon the question. See, also, *In re Howe and wife*, 1 Paige Ch. 124; *Holly* v. *Brown*, 14 Conn. 255; *Abbott* v. *Goodwin*, 20 Me. 408; *Pierce* v. *Emory*, 32 N. H. 484 (*i. e.* 505); *Ketchum* v. *Johnson*, 3 Green's (N. J.) R. 370; *Holroyd* v. *Marshall*, 2 Gifford's Ch. R. (Eng.) 382; *Dunham* v. *Isett*, 15 Iowa, 284, and cases there cited.

By the strict common-law rule, it is doubtless true, that a party could not mortgage property, not then *in esse*, so as to vest a title in the mortgagee when the property should come *in esse*. But, at the civil law he could. Domat, part 1, book 3, title 1, section 1, article 507. Courts of equity, and under our practice, courts of law also, will recognize the rights of such mortgagee, and enforce them as against all persons having notice of them. If it does not, at the common law, amount to a technical legal mortgage, it is, at least, an equitable mortgage. Of course, it is necessary that such future-acquired property, shall be capable of identification.

Affirmed.