MISSISSIPPI VALLEY AND WESTERN RY. Co. use, etc.

*v.*

THE UNITED STATES EXPRESS COMPANY.

1. GARNISHMENT—*as to earnings of railroad while under mortgage.* The earnings of a railway company from the operation of its road, though mortgaged to secure the payment of certain bonds, before foreclosure or posses-

sion taken by the trustee, may be reached by other creditors of the company, and is liable to garnishment, where the mortgage provides that, until default, the company may possess and use the road, etc., and receive the rents, profits and increase arising therefrom.

2. MORTGAGE—*mortgagor not accountable for rents.* The rule at common law, and followed by this court, is, that the mortgagor is not required to account to the mortgagee for rents and profits while he remains in possession.

3. CONTRACT—*when construed with reference to law of another State.* Where a mortgage is given upon a railroad and its property, situate partly in two other States, where the road is operated, but the proof does not show where the mortgage was executed, this court will not be bound, by the law of comity, to adopt the construction given by the courts of one of those States to a similar mortgage, as, that it includes the earnings of the road, but it will be presumed that the courts of the other State will construe the instrument in accordance with the common law rule.

APPEAL from the Circuit Court of Adams county; the Hon. JOSEPH SIBLEY, Judge, presiding.

This suit was commenced by John Meyer & Co., before a justice of the peace, by attachment against the appellant corporation, and the United States Express Company served as garnishee. The case was taken to the circuit court by appeal. The court rendered judgment in favor of the plaintiff, and against the express company as garnishee. The trustees of the railway company interpleaded, claiming what was due from the express company, as belonging to them under the mortgage of the railway company.

Messrs. WHEAT, EWING & HAMILTON, and Mr. G. EDMUNDS, JR., for the appellant.

Messrs. DAVIS & POLLING, and Messrs. WHEAT & MARCY, for the appellee.

Mr. JUSTICE SCHOLFIELD delivered the opinion of the Court:

Appellant having mortgaged its property and income to trustees, to secure the payment of certain indebtedness, the question is, whether its earnings, after the execution of the mortgage, and before foreclosure proceedings are instituted or

possession is taken by the trustees, can be reached by other creditors.

The mortgage conveys to the trustees the "rights, powers, franchises, emoluments, income and property," of whatever description, and no objection is taken to appellant's capacity to convey whatever can be conveyed by such an instrument.

The mortgage provides, that if default be made in the payment of interest or principal becoming due on the bonds secured, and if such default shall continue for six months, it shall be the duty of the trustees, upon request of a certain portion of the bondholders, " to enter, forthwith, upon the railroad property," etc., and they are authorized to hold, use or operate the same until all overdue coupons are paid, or until the road and its property shall be sold pursuant to the power in the mortgage or under a decree of court, during which time they are to receive the "tolls, freight, income, rents, issues and profits thereof." But, until default by appellant, it is to possess and use the road and property, and receive the rents, profits and income arising therefrom. When the trustees are in possession, they are empowered to make useful alterations, additions and improvements, and needful repairs, which, there being no other provision in that respect, would have to be paid out of the earnings of the road, and, before possession by the trustees, the necessary current expenses, it is conceded, would have to be paid by appellant out of the earnings of the road; but it is claimed by appellant, that, subject to the payment of such necessary expenses, the income passes, by the mortgage, to the trustees, before, as well as after, possession taken by them.

In *Galena and Chicago Union Railroad Co.* v. *Menzies*, 26 Ill. 121, it was held, where a corporation had given a mortgage or deed of trust of all its property, tolls, incomes, franchises, etc., to secure the payment of principal and interest due on its bonds, the revenues so pledged are not liable to a garnishee process by its judgment creditors, but in that case the income in question was earned and derived by the trustees under the deed of trust or mortgage whilst they were in pos-

session of the property, and in that respect it is not analogous to the present case.

The rule at common law, and followed by this court, is, that the mortgagor is not required to account to the mortgagee for rents and profits while he remains in possession. *Moore* v. *Titman*, 44 Ill. 370.

From the language of the mortgage which we have quoted, we are unable to discover an intention to vest a right to the income in the trustees, until default in the condition and possession taken by the trustees on account thereof. In that event, they are to receive the tolls, freight, income, rents, issues and profits; but, until then, these are to be received by the mortgagor. It is true, it is its duty to apply the income, after the payment of current expenses, including necessary repairs and improvements, to the liquidation of the interest due upon its bonds; but this obligation, of its own force, no more carries title to the particular money received as income to the bondholders or trustees, than does the obligation to pay a debt, in ordinary cases, carry title to the creditors, of the money in the debtor's pocket. The fact that the mortgagor is in possession, operating the road, renders it indispensable that it shall pay current expenses, and for necessary repairs and improvements, and that it shall exercise its judgment and discretion as to the extent repairs and improvements shall be made; and this can only be paid out of the income. It is inconsistent with such control over the income, that it shall be the property of the trustees.

The Supreme Court of the United States fully express our views, in considering a question in all respects the same as that before us, in *Gilman & Cowdry et al.* v. *The I. and M. T. Co.* (91 U. S. 603) and *The D. V. R. R. Co. and Coykendall, garnishee,* v. *The I. and M. Tel. Co.* two cases considered together.

The court say: "It is clearly implied in these mortgages, that the railroad company should hold possession and receive the earnings until the mortgagees should take possession, or the proper judicial authority should interpose. Possession draws after it the right to receive and apply the income.

Without this the road could not be operated and no profits could be made. Mere possession would have been useless to all concerned. The right to apply enough of the income to operate the road will not be questioned. The amount to be so applied was within the discretion of the company. The same discretion extended to the surplus. It was for the company to decide what should be done with it. In this condition of things the whole fund belonged to the company, and was subject to its control. It was, therefore, liable to the creditors of the company, as if the mortgages did not exist. They, in nowise, affected it. If the mortgagees were not satisfied, they had the remedy in their own hands. They could, at any moment, invoke the aid of the law, or interpose themselves without it. They did neither." And to the same effect is *The Galveston Road* v. *Cowdry*, 11 Wallace, 482.

But appellant is a corporation created by acts of the legislatures of the States of Iowa and Missouri, and its road is located in those States, although its cars are also run over the bridge which crosses the Mississippi river at Quincy, and into this State; and it is insisted the Supreme Court of Iowa has decided that the income belongs to the trustees, and can not be reached by process of garnishment at the instance of creditors, and that comity requires that we should follow the construction given to the mortgage by the Supreme Court of Iowa. The ruling in *Dunham* v. *Isett et al.* 15 Iowa, 284, seems to go to the extent claimed, although the distinction between income received by trustees in possession, and income received by the mortgagor before possession taken by the trustees, does not appear to have been discussed in argument or considered by the court.

Conceding the ruling, however, to be the settled doctrine of that court, is this a case in which comity requires us to follow it?

It is not shown that the mortgage was executed in Iowa, and there can be no greater presumption that it was executed there, because it applies to property which has its *situs* there, than that it was executed in Missouri, for a part of the prop-

erty (whether the greater or the less is unimportant) has its *situs* in that State. The question is not shown to have ever been adjudicated in Missouri, and what the rulings of her courts may be in that respect remains to be determined in the future. The common law is in force there, and if we were to presume at all, we should presume it will, when the proper case shall arise, be held there as it has been by the Supreme Court of the United States. In that event, we certainly could not be called upon to follow the ruling in Iowa, for comity would equally demand we should follow the ruling in Missouri, and the only course would be for us to pursue our own views of the law.

But comity, in no case, requires us to follow other than what we regard as the clearly established law of the foreign jurisdiction, with reference to the contract to be affected by it. Here, so far as the question before us is concerned, the contract is affected by the laws of two foreign jurisdictions. Neither is superior to the other, and the ruling in one may be diametrically opposed to the ruling in the other. One we know, and the other we do not know. Under these circumstances, is it not plainly our duty to adopt that construction which we believe to be authorized by the law, without regard to where the contract was made? We think the case, from the peculiar circumstances, is one in which the obligations of inter-State comity, in the application of the law, can not be appealed to.

Treating the road as operated, where the income was produced, as a unit, it is affected by the laws of this State as well as by those of Iowa and Missouri, and there certainly is nothing that requires us, in that view, to adopt and enforce the Iowa ruling.

The judgment is affirmed.

*Judgment affirmed.*