First Union Trust and Savings Bank, Complainant, v. Division State Bank et al., Defendants.
Esther Homer et al., Appellees, v. First Union Trust and Savings Bank, Appellant.

Gen. No. 36,918.

Opinion filed November 21, 1933.

TATGE & TATGE and SONNENSCHEIN, BERKSON, LAUTMANN, LEVINSON & MORSE, for appellant; ROBERT F. KOLB, DAVID LEVINSON, ABRAHAM FISHMAN and ISAAC E. FERGUSON, of counsel.

WOLF & LOVE, for appellees; STEPHEN LOVE, LOUIS F. DAVIS and GEORGE BROIDE, of counsel.

MR. PRESIDING JUSTICE HALL delivered the opinion of the court.

In this case, complainant as trustee in a mortgage deed of certain real estate given to secure a loan of $250,000, since reduced to $200,000, evidenced by bonds, both of which were executed by certain of the defendants, filed a sworn bill in chancery to foreclose the same. The bonds bear 6 per cent interest before maturity and 7 per cent after maturity. It is charged in the bill that defendants have defaulted in the payment of interest and instalments of principal agreed to be paid by the terms of the contract; that a large amount of taxes levied against the mortgaged premises, agreed to be paid by mortgagor, have not been paid; that the owners of the property have committed waste and have permitted the premises to deteriorate and to develop into a state of disrepair, and that the rents collected which were pledged by such trust deed as partial security for such loan, have been diverted to the personal uses of certain of the defendants instead of being used for the payment of the debt and the maintenance of the property. It is also charged in the bill that the property has so depreciated in value that it is scant security for the loan. The trust deed provides, in case of such defaults, that a receiver may be appointed for the mortgaged property. Complainants prayed for the appointment of such a receiver. The mortgaged premises consist of a business block comprising 12 stores, a theatre, a hall, and a number of suites of offices. The trust deed contains all the usual provisions in regard to the mortgaging of the rents, the right to a receiver and the right to possession of the premises after default.

Certain defendants filed an answer in which they admit all of the material allegations of the bill, except the allegations charging waste, and that the property is scant security, which allegations are denied. Complainant's right under the law to institute the proceedings and have the relief prayed, are not denied,

but tacitly admitted. In addition to the answer these same defendants filed a petition in which they allege among other things that because of the large amount of taxes levied against the premises, these defendants were unable to pay the interest and the instalments of principal as they became due, and that since April 1st, 1932, they have paid over to complainant all the net income from the property—except approximately $8,000—for the benefit of the bondholders, and for the payment of certain deposits on account of taxes. It is alleged in the petition that because of the decrease in the amount of rent possible to be collected from the property, which condition has come about since the execution of the trust deed, and because of the great amount of taxes levied against the property, defendants are not able to secure sufficient income from the premises to pay any of the instalments on the principal as they have and will become due, and only 2½ per cent instead of 6 per cent interest as the interest instalments become due. This petition further recites that because of the cost of the foreclosure and administration of the property by a receiver, the interests of all parties concerned will be best conserved by allowing certain of the defendants to remain in the management and control of the property, to collect the rents and account to the trial court for all their acts and doings. This petition sets forth with much elaboration general statements concerning the economic situation now prevailing in the country and its effect on real estate values in Cook county. Alleged data as to the great number of foreclosure suits brought and pending in the courts of Cook county and the large sums of money alleged to have been paid for solicitors, masters and other fees in and about the foreclosure of mortgages, is set forth in this petition. Exceptions to the petition were filed, as well as a general demurrer thereto, both

of which were overruled by the court in the order appealed from.

From the record in the instant case, it appears that nothing was before the court other than the bill, answer and petition. No testimony was taken.

The findings of fact and the order appealed from, are in part and in substance as follows:

That with taxes at the rate of approximately $7,000 per year, and with a net operating income of approximately $12,000 per year, the bondholders cannot realize from the said premises more than approximately 2½ per cent per year by way of interest on. the indebtedness of $200,000 which still remains unpaid, and this without setting up a reserve to amortise the principal of the said indebtedness; that if the expense of a foreclosure or receivership be added, then the bondholders will receive no interest whatever on their holdings, nor can any fund be set up to amortise the principal of the said indebtedness; that in view of the fact that the complainant is in possession of all of the bonds, and is the trustee under the trust deed, there is no necessity for a foreclosure of the aforesaid trust deed at this time, because these defendants are entirely willing, and hereby offer, and have heretofore offered, to cause all of the net operating income of the said premises, together with a statement of rentals and expenditures, to be turned over to the complainant monthly, for the benefit of the bondholders, pursuant to order of this court; that these defendants have even offered to the complainant, for the benefit of the bondholders, that if the above indebtedness were canceled then they would convey the title to the aforesaid premises to the complainant, or any person by it appointed, for the benefit of the bondholders, in consideration for an option to repurchase the premises within two years plus a cash consideration of $5,000; that these defendants made the said offer to the com-

plainant even though these defendants have a cash investment in the said premises, over and above all revenue by them received from the premises, of over $150,000; that despite the fact that an expenditure of $5,000 for the said deed would be about one-fourth of the cost of a foreclosure and receivership, the complainant has rejected the said offer and has filed this suit and is now seeking a receiver for the aforesaid premises; that all of the defendants are insolvent, and that a deficiency judgment would afford no relief to complainant, which fact defendants admit; that the expense of the foreclosure proceeding herein, including solicitor's fees, master's fees and other costs would amount to approximately $20,000, which, in case of foreclosure, would be a total waste; that on January 1, 1933, more than $1,300,000,000 worth of real estate in Cook county was in foreclosure receivership; that the number of foreclosure suits brought in Cook county in the years 1926 to 1932 inclusive was 41,817; that the total mortgage indebtedness upon which foreclosure suits were brought in Cook county for the years 1930 to 1932 inclusive was $1,223,247,437; that because of low rentals in Cook county, every incumbered piece of real estate in Cook county is now, or very shortly will be, in default in its mortgage indebtedness, and that approximately 500,000 parcels of real estate which are incumbered, will shortly be in foreclosure, which will impose upon the courts of Cook county a task which it will be impossible for them to assume and that a study of several hundred cases of mortgage foreclosure in Cook county indicates that excessive fees have been allowed to masters and solicitors in such foreclosure proceedings.

The court ordered that the motion for receiver be denied, and that the defendants, Joseph Homer, Louis Homer, Jack Homer and Abe Homer, remain in possession of the property, to operate and manage the

same with the power, rights and duties usually vested in receivers, being accountable to the court as if they were receivers, and that they be excused from the necessity of filing bond as receiver; that such owners in possession should make an itemized statement of receipts and disbursements and turn over to the complainant the net income of the premises for each month, and that the complainant use the moneys received for the payment of past and current taxes, and that until such taxes have been paid, the bonds described in the bill of complaint shall bear no interest, but that after the payment of all past due and current taxes, the complainant shall use all moneys in its possession for the purpose of paying interest of not more than 3 per cent per annum, and that if there is any surplus after the payment of such interest, such surplus shall be applied to the ratable reduction of the principal indebtedness of the said bonds; that the complainant be enjoined from returning to the owners any of the bonds described in the bill of complaint; that the complainant be enjoined from taking any further action in this suit until the further order of the court; that the bondholders be restrained and enjoined from instituting any action in equity or at law upon the said bonds until the further order of the court, and that the defendants be excused from the necessity of filing any bond as a prerequisite to the taking effect of the injunctional orders.

While this court appreciates the fact that a great hardship is frequently visited upon owners of real estate of the character involved in this case who have mortgaged the same, and from which the income, under prevailing conditions, is frequently insufficient to pay the charges contracted to be paid, we also have in mind the fact, generally known, that the owners of bonds for the payment of which these properties are pledged, are suffering in the same degree as the mortgagors. We are unable to find any authority which

gives a court or chancellor the power to alter the terms of a written contract, or to declare a moratorium on debts agreed to be paid, both of which the trial court by its order seeks to do, in direct violation of the Federal and State constitutions. The law in this State on the subject of the rights of the mortgagee after default is so well settled that it seems almost useless to cite authority. In *Rohrer v. Deatherage,* 336 Ill. 450, the Supreme Court said:

"The first proposition of the plaintiff in error that the inclusion in the Rohrer mortgage of the rents, issues and profits of the land, with the land itself, would not alone deprive the mortgagor of the right to receive the rents for his own use until the mortgagee took some steps to enforce his lien upon the rents and profits, is a correct statement of the law and is supported by the authorities cited. The mortgagor is entitled to his rents until a receiver is actually appointed, and the receiver cannot collect rents already paid to the mortgagor (*Mississippi Valley and Western Railway Co. v. United States Express Co.,* 81 Ill. 534; *Gilman v. Illinois and Mississippi Telegraph Co.,* 91 U. S. 603; *Sullivan v. Rosson,* 223 N. Y. 217.) In this State a mortgagor is the legal owner of the mortgaged premises against all persons except the mortgagee and his assigns. . . . While a mortgage conveys a title as between the mortgagor and the mortgagee, it is only a qualified title as security for the creditor during the existence of the debt, and the mortgagor is regarded as the owner of the land for all beneficial purposes, subject only to the rights of the mortgagee. (*Theiner v. Speckin,* 290 Ill. 181; *Fitch v. Pinckard,* 4 Scam. 69.) After condition broken, however, the mortgagee is, as between him and the mortgagor, the owner of the fee. (*Ladd v. Ladd,* 252 Ill. 43; *Ware v. Schintz,* 190 id. 189; *Waughop v. Bartlett,* 165 id. 124; *Esker v. Heffernan,* 159 id. 38; *Oldham v. Pfleger,* 84 id. 102; *Barrett v. Hinckley,* 124 id. 32.) . . . After condi-

tion broken, ejectment may.be maintained by the mortgagee against the mortgagor or those to whom he may have assigned the equity of redemption. (*Taylor v. Adams,* 115 Ill. 570.) Upon default in the condition of the mortgage the mortgagee has the right to possession against the mortgagor, his grantee, lessee or anyone claiming under him by any right. In such case the mortgagee has several remedies which he may pursue to enforce the payment of his debt. He may sue the mortgagor in assumpsit for a judgment upon the personal obligation; he may sue in equity for the foreclosure of the mortgage; or he may recover the possession of the mortgaged property by an action of ejectment. These remedies are concurrent or successive, as the mortgagee may deem proper, and he may pursue any two or all three of the remedies simultaneously. (*Bradley v. Lightcap,* 202 Ill. 154; *Fish v. Glover,* 154 id. 86; *Harper v. Ely,* 70 id. 581; *Rogers v. Meyers,* 68 id. 92; *Carroll v. Ballance,* 26 id. 9; *Vansant v. Allmon,* 23 id. 26.) On March 14, 1924, when the bill was filed, there had been a default in compliance with the terms of the mortgage. Upon demand of the mortgagee it was equally the duty of Deatherage, the mortgagor, and Coe, his lessee, to surrender possession to him." Under the showing made here, complainant should have been given the relief to which it is entitled under the law.

In the decree appealed from, the court, among other things, finds in effect, that excessive fees have been allowed to solicitors and masters in chancery in foreclosure proceedings, and seems to conclude that excessive fees will be allowed here, and predicates his findings largely on this conclusion. Except from the court's findings in this case, this court has nothing before it to suggest that excessive fees have been habitually allowed in foreclosure proceedings. If this were true, the fault lies with the chancellors before

whom the hearings were had, who had it in their power to fix reasonable fees only, such fees to be based upon the character and amount of services rendered. Even if it were true that excessive fees have been allowed in foreclosure proceedings, this fact, if it were a fact, did not give the court in this case the power to take from a mortgagee the right to foreclose where the mortgagor has defaulted, which it does by this decree. Also, in this decree the chancellor enjoins the collection of the rate of interest agreed to be paid, and enjoins and restrains the trustee and the owners of the bonds in the mortgage deed from asserting the rights which the contract and law give them. In all of these particulars, the court was in error.

From the decree in this cause entered in the circuit court of Cook county on April 1, 1933, an appeal was prayed and allowed, and a complete record filed in this court and docketed as case No. 36,808. Subsequently, this interlocutory appeal from such decree was perfected, a complete record filed in this court and docketed as case No. 36,918. Thereafter, an order was entered by and with the consent of the parties consolidating these cases for the hearing, and but one set of briefs and abstracts was filed.

The order of the court in this case is that the decree and order of the circuit court of Cook county restraining and enjoining the complainant from returning any of the bonds described in the bill of complaint to the respective owners thereof, restraining and enjoining complainant and the owners of such bonds from instituting any action in equity or at law upon the said bonds, or any of them, restraining and enjoining further action in the prosecution of this suit, and the collection of more than 3 per cent interest on such bonds, be reversed and remanded.

*Reversed and remanded.*

Wilson and Hebel, JJ., concur.