## N. C. BAILEY v. JOHN S. LONG.

AGREEMENT to Deliver Corn; Separation and Delivery; Title. A., being the owner of sixty acres of ungathered corn, and in debt to B. in a certain amount, and to L. in another sum, made an agreement with them, by which he was to deliver to B., in satisfaction of his debt, 500 bushels of corn, the same to be gathered by B., out of the said sixty acres, and a pair of mules upon which L. held a chattel mortgage, and also to deliver to L., on the latter's farm, and to be weighed on his scales, corn to the amount of $250, at the price of fifteen cents per bushel, and in the rise up to twenty cents per bushel, on the delivery of which L. was to credit his claim against A. with $250, and to release his lien upon the mules. There was no separation of the corn, and it was estimated that there would be corn enough to satisfy the agreement with B. and L., and, also what A. should want for his own use. After some of the corn had been delivered to L., (but how much is not shown,) a constable, with an execution against A., levied upon thirty acres of standing corn, being a

part of the corn above mentioned, and of the value of $240. L. thereupon brought replevin, claiming to be the owner. *Held,* That upon the facts as stated, no delivery and no separation having been made, and both price and number of bushels as yet unsettled, the title had not passed away from A., and that L. could not maintain his action.

### *Error from Doniphan District Court.*

REPELVIN brought by *Long,* against *Bailey* (constable), to recover the possession of certain corn. The facts are stated in the opinion. Trial at the March Term, 1877, of the district court, and judgment for the plaintiff. The defendant, *Bailey,* brings the case here.

*Franklin Babcock,* for plaintiff in error:

Under the facts found by the court, the agreement between T. W. Bailey and J. S. Long was an executory agreement, and not an absolute sale. The title to the property remained in T. W. Bailey, and was subject to the levy of an execution against his property. (Benjamin on Sales, 2d ed., §§ 308, 309, 310, 311; 5 Wait's Actions and Defenses, 541, § 10; 21 Vt. 147; 29 Ala. 294; 35 Me. 385; 20 Mo. 553; 2 Ired. [N. C.] L. 36; see also 7 Wend. 404; 5 N. H. 265; 45 Vt. 124.)

To effect a complete sale, the contract must be executed. (45 Vt. 124; 6 Cranch, 36; 3 Pa. St. 50; Blackburn on Sales, 151; 5 Kas. 663.)

There is no complete sale, no transfer of title to particular goods, until they have been separated from the entire stock. Before such separation, there can be, at best, only a contract to sell. (14 Kas. 288.)

*B. A. Seaver,* for defendant in error:

By no rule of interpretation known, can the sale by Bailey to Long be considered an executory agreement. The property sold was pointed out and identified, the price agreed upon, and actually paid, and all the elements requisite to constitute an absolute sale were present in the contract. (1 Parsons on Contracts, 435.)

It is always a question of fact for the jury, whether a sale has been completed or not.  (1 Par. Con. 465, old ed.)

Where the record fails to show affirmatively that all the evidence is presented, this court cannot say whether the finding is against it or not.  (8 Kas. 466.)

This court will not disturb the verdict of a jury, and refusal of the court below to grant a new trial merely on a'preponderance of testimony against the verdict.  (5 Kas. 58.)

The finding of a court upon a question of fact is conclusive in this court as the verdict of a jury. (16 Kas. 388; 12 id. 575; 21 id. 10, 250; 13 id. 168; 20 id. 292; 10 Cent. L. J. 495.)

The opinion of the court was delivered by

BREWER, J.: This was an action of replevin for corn, and the question is, whether defendant in error had acquired title to said corn by an agreement with one T. W. Bailey, the former owner, or was it still the property of said T. W. Bailey, and subject to levy on an execution against him?  The case was tried by the court, without a jury.  Special findings of fact were made in favor of the plaintiff, defendant in error. The testimony has not been preserved, and the case stands before us on the pleadings, findings, and judgment.  The findings of fact and conclusions of law are as follows:

"The court finds as matters of fact, that on or about the 27th day of November, 1876, Thomas W. Bailey was indebted in a judgment of about one hundred dollars to Kennedy & Amsbury, and the constable, Scott Thomas, had· levied an execution in said judgment, upon corn standing in the field on the premises of said Thomas W. Bailey, being a part of the same corn in controversy in this action; that on the said 27th day of November, 1876, and for a long time previous, said Thomas W. Bailey was indebted to this plaintiff, J. S. Long, in the sum of about five hundred dollars, which indebtedness was secured by a mortgage given by said T. W. Bailey to said Long, upon a certain pair of mules, purchased by said Bailey from James J. Brimm, and upon other personal property; that at said date, said T. W. Bailey

was indebted to said Brimm in about the sum of three hundred and sixty-five dollars; that on the said 27th day of November, 1876, in the presence of James A. Kennedy, James J. Brimm, and of Franklin Babcock, who was present as the agent and attorney of C. H. & L. J. McCormick, who also held a claim against said T. W. Bailey, and which he was endeavoring to collect from said Bailey, of which plaintiff had knowledge, the said T. W. Bailey agreed with this plaintiff, J. S. Long, that he would deliver on the premises of said plaintiff a sufficient quantity of corn, at the price of fifteen cents per bushel, to amount to the Kennedy & Amsbury judgment, and this plaintiff agreed, in consideration of said promise, to pay off and satisfy said Kennedy & Amsbury judgment, and both of said parties have performed their agreement; that at said time and place, said T. W. Bailey, in order to liquidate his indebtedness to said Brimm, agreed with said Brimm to deliver to him the pair of mules heretofore mentioned and five hundred bushels of corn, to be gathered by said Brimm out of the corn standing in the fields on the premises of said T. W. Bailey, and at the same time and place the said T. W. Bailey agreed to deliver to this plaintiff, J. S. Long, at the farm of plaintiff, and to be weighed on plaintiff's scales, corn to the amount of two hundred and fifty dollars, at the price of fifteen cents per bushel, and in the rise up to twenty cents per bushel, on the delivery of which this plaintiff was to credit in that sum to said T. W. Bailey on his indebtedness to plaintiff, and to release the lien of his mortgage upon the aforesaid pair of mules, which T. W. Bailey had turned over to Brimm with Long's assent; that at this time said T. W. Bailey had about sixty acres of corn standing in the field on the stalks, not gathered; that on the 2d day of December, 1876, C. H. & L. J. McCormick duly obtained judgment against the said T. W. Bailey in the sum of one hundred dollars; and costs taxed at eleven and eighty-five one-hundredths dollars, before P. S. Soper, justice of the peace for Center township, Doniphan county, and on the 4th day of December, 1876, (some of the corn having, prior to that date, been delivered, under the agreement of November 27, hereinabove stated,) an execution on said judgment was issued out of said justice's court, directed and delivered to this defendant, who was a constable of said Center township, Doniphan county, and this defendant did, on the next day succeeding, levy the same upon about thirty

acres of corn, not gathered, standing in the field, upon the premises of said T. W. Bailey, and taken as the property of said T. W. Bailey, and which is a part of the same corn which was owned by said T. W. Bailey at the time of making the above-mentioned contract with this plaintiff, and advertised the same according to law; that on the 14th day of December, 1876, before any sale of said property, this plaintiff brought this action of replevin against this defendant for the possession of the corn so levied on, and by virtue of said process of replevin, the sheriff of Doniphan county took said corn out of the possession of this defendant and delivered the same to this plaintiff; that the value of said corn is two hundred and forty dollars.

"The court further finds that the proof showed that such disposition and transfer were supposed and estimated at the time to take all the corn in the field, except what Bailey would want for his own use; that said Babcock being present, as the agent of McCormick, as has been stated, had knowledge of all the above agreement, and did not dissent nor notify any of the parties making said agreement that he objected thereto; and that he was asked to put the above agreement in writing at the time by the said parties, but stated to the other parties that it was unnecessary—that the contract not in writing was as good as though it was put in writing, and no writing was executed. This was stated in reply to a question by the other parties put to him.

"The court finds further, that the corn which this plaintiff was to have was not separated from the other in the field which Brimm was to have, or the surplus which would remain to said T. W. Bailey.

"And as conclusions of law, the court finds that the property involved in this action was, at the commencement thereof, the property of this plaintiff, J. S. Long, and that he was entitled to the immediate possession of said property."

Do these findings of fact sustain the conclusion of the court, that the title had passed from Bailey to Long? It may be remarked in passing, that this is the controversy referred to in the case of *Brimm v. Long*, 22 Kas. 153, and one which the plaintiff in error has been very slow in bringing up for review. Perhaps the relationship of the two cases has caused the delay in this.

Had the title to the corn levied on passed from T. W.

Bailey to Long? As the corn had been the property of said Bailey, the levy was good, unless the sale had actually been completed and the title passed. A mere executory contract, an agreement to sell, would not be sufficient. So long as T. W. Bailey had the title and the right to control the property, it might be taken for his debts, notwithstanding any agreement he might have made to sell it. It is unquestionably true that the intent of the parties controls, and that if they intended a present vesting of title, it did in fact pass at once to Long, and that, though the actual delivery was to be made subsequently and under the management of the vendor, and though the exact number of bushels was as yet unascertained. As Benjamin, in his work on Sales, § 309, says: "Both these contracts" (the contract of sale and the contract to sell) "being equally legal and valid, it is obvious that whenever a dispute arises as to the true character of an agreement, the question is one rather of fact than of law. The agreement is just what the parties intended to make it. If that intention is clearly and unequivocally manifested, *cadit quæstio*." But what was their intention? It is true in this case, as the learned author goes on to say: "But parties very frequently fail to express their intentions, or they manifest them so imperfectly as to leave it doubtful what they really mean, and when this is the case, the courts have applied certain rules of construction, which in most instances furnish conclusive tests for determining the controversy."

If the findings had shown that it was the understanding and intent of the parties that title should pass at once, we should be relieved of difficulty; but they certainly, in terms, assert no such thing. True, the conclusion to which the district court came was, that Long was the owner, but that is not a finding of fact, but a conclusion derived from the facts as previously stated. In other words, the district court affirmed, not that the testimony disclosed an intent to consummate the sale and immediately pass the title, but that the facts as found, show such a passage of title. With this conclusion we cannot concur. It seems to us that the facts

do not disclose an intent to transfer the title to any specific property, and that it was not the understanding that the title to this particular thirty acres of corn should vest in Long. Several things indicate this. There was no delivery of the corn. Indeed, the contract expressly provided for a future delivery at a different place, and an unsettled time; and only upon such delivery was Long to credit the indebtedness, and release his lien upon the mules. Neither the specific article, nor the quantity, nor the price, was fixed. Two hundred and fifty dollars worth of corn was to be delivered on the farm of Long, but whether 1666⅔ bushels or only 1250 would be required, depended on the time of the delivery and the rise of the market. Could Long on the day of this contract have maintained replevin for 1666⅔ bushels of corn in that field? And yet if the title had passed, he could. Again, it appears that certain corn was to be delivered out of this sixty-acre field to Long to reimburse him for paying the Kennedy judgment, five hundred bushels to Brimm to satisfy his debt, and from 1250 to 1666⅔ to Long on his debt. Now what relation did these parties sustain to each other in respect to this corn? Was each the owner of a certain number of bushels in the field, as of a certain number of bushels of corn in a crib? In case of loss, did they lose *pro rata?* In case the quantity did not hold out, did they share the difference *pro rata?* Brimm was to gather his, Bailey to deliver Long's. Was Brimm to have his first and anyway, and Long to look to the remainder for his corn?

Still again, Bailey had sixty acres of corn. The levy was upon only thirty. How did it happen that this thirty acres belonged to Long instead of the other thirty? Had Brimm appropriated the other thirty, or was it what was left for Bailey? Had Brimm gathered his corn, or was he owner of five hundred bushels in this that was replevied? The findings show that no separation was made in the first place, and do not show that any had been made since. How then was it that Long owned this that was levied on? But it may be said that Brimm and Long were the joint owners of all, and

that therefore Long could recover because the defect of parties plaintiff was not raised by demurrer or answer. The findings, however, show that Bailey was supposed to own some; that after he had delivered to Brimm and Long all he contracted, it was believed there would be a remainder for his own use. How much that remainder was supposed to be, or in fact was, we are not advised. Perhaps enough to pay the execution in satisfaction of which this levy was made. If so, was it exempt?—and whether exempt or not, what right has Long to replevy such surplus from the constable's hands?

Still further, the findings show that some of the corn contracted for had been delivered to Long, but how much is not shown. He was to receive $250 worth. If he had already received $100 worth, how does he still own, and how can he maintain replevin for, $240 worth?

We have made these various suggestions in no captious spirit, but because they serve to show that the facts do not indicate a present passage of title, but the reverse, and only an agreement to sell and deliver an unascertained quantity of corn. They suggest very forcibly the second of the rules laid down by Mr. Justice Blackburn, (Benjamin on Sales, § 319:) "Where anything remains to be done to the goods for the purpose of ascertaining the price, as by weighing, measuring or testing the goods, where the price is to depend on the quantity or quality of the goods, the performance of these things also shall be a condition precedent to the transfer of the property, although the individual goods be ascertained, and they are in the state in which they ought to be accepted." Here, the price was unsettled, to depend on the market at the time of delivery, and the amount to be delivered was to vary inversely as the price. How, then, can it be said that the title had passed?

We think, upon the findings, the conclusion of the district court was erroneous, and that the judgment must be reversed, and the case remanded with instructions to render judgment in favor of plaintiff in error, defendant below, for the amount of the execution in his hands.

All the Justices concurring.