M. E. LARKIN, *as Sheriff of Atchison County,* v.
H. W. JOHNSON.

#### No. 404.

TITLE AND OWNERSHIP—*Growing Crops.*   A verbal contract for
the sale of unmatured standing corn and rye in the stack, which
provides that the vendor shall, before he receives pay therefor,
husk, weigh and deliver the corn at the market price, and thrash,
weigh, measure and deliver the rye at some future time at forty-
five cents per bushel, does not vest the title to such property in
the vendee.

Error from Atchison district court;   W. D. WEBB,
judge.   Opinion filed October 12, 1898.   Reversed.

*Jackson & Jackson,* for plaintiff in error.

*A. F. Martin,* for defendant in error.

The opinion of the court was delivered by

McELROY, J. :   This action was brought by H. W.
Johnson, the defendant in error, against M. E. Larkin,

Larkin v. Johnson.

as sheriff, to recover damages for the wrongful taking and conversion of personal property. The plaintiff alleged in his petition that M. E. Larkin was the duly elected, qualified and acting sheriff of Atchison county; that the plaintiff was the owner and in possession of two stacks of rye and an undivided one-half of the corn upon the northwest quarter of the northeast quarter of section 6, township 5, range 17, Atchison county, of the value of $500; and that defendant wrongfully took possession of and carried the property away and converted it to his own use. The answer contained a general denial, and an allegation that all of the acts complained of were performed by the defendant as an officer under proper order and authority of the court. A trial was had before the court and jury, which resulted in a verdict and judgment for the plaintiff. The defendant filed a motion for a new trial, which was overruled, and presents the case to this court for review, alleging error in the proceedings of the trial court.

The only question necessarily presented for the determination of the court by the record is whether the defendant in error acquired title to the corn and rye by an agreement with Franklin Guess, the former owner, or whether the title to the property remained in Franklin Guess, and by reason thereof was subject to levy and sale on the execution held by the sheriff against the property of Guess.

The record discloses the following facts: Franklin Guess, in July, 1894, was the owner and in possession of two stacks of rye and the undivided one-half of eighteen acres of growing corn, situated upon the above-described premises. The defendant in error Johnson contends that he became the owner of the rye and corn by purchase, in July and August, 1894.

The evidence in support of this contention is as follows :

Franklin Guess testified : "I sold my interest in that corn to Hiram W. Johnson, the plaintiff in this case, in July, 1894. The corn was sold by the sheriff as it stood in the field some time in September. I sold the rye to Mr. Johnson about the first of August, 1894, at forty-five cents per bushel ; thought it would make about 150 bushels. It had been stacked about two weeks when I sold it. Johnson was to have the corn that was on that undivided half (my interest) at whatever corn was worth when it was taken in. I had money borrowed of him ; first $100 ; gave my note for it ; then I borrowed $100 and he gave me a check for it ; there was no note given for that. I borrowed $200. I paid $50 or $60 of it. I owed Johnson about $150. I was to deliver the corn at Horton.

" Q. Then at the time of this transaction you had not delivered the corn? A. No, sir.

" Q. At the time you sold the corn to Mr. Johnson, he gave you no credit on the amount of your indebtedness to him, did he? A. I do n't know what he did on that.

" Q. You did n't know of his giving you any credit for any amount, did you ; the fact is, you did n't know what the credit would be and he could n't have given you any credit? A. No, he did n't give me any credit.

" Q. You were to deliver the corn to him at Horton ; it was to be sold and the amount applied upon your indebtedness to him at whatever the corn would bring, at the price at the time it was delivered to him ? A. Yes, sir.

" Q. In whose possession was this corn at the time you sold it to Mr. Johnson ? A. It must have been in my possession ; I had it rented — I had the ground rented.

" Q. On what terms was the rye sold to Mr. Johnson? A. Sold at whatever it would be — at so much per bushel.

" Q. When it was thrashed out? A. Yes, sir ; at the time I sold it we set the price at forty-five cents per bushel.

"Q. Did you estimate the number of bushels in it? A. We supposed—I did—there would be about 150 bushels, or upwards.

"Q. Where were you to deliver the rye to Mr. Johnson? A. Horton, at his mill.

"Q. When were you to deliver it? A. Whenever we thrashed it.

"Q. When did Mr. Johnson pay you for the rye? A. In those notes. I had the money before, and the same as it was on the corn.

"Q. Just a verbal agreement? A. Yes, sir.

"Q. In whose possession was this rye at the time the sheriff levied upon it? A. It was in my possession."

H. W. Johnson testified that he was the plaintiff, that he resided at Horton, and that his occupation was the real estate and grain business. Continuing, he said:

"I bought the rye and corn of Franklin Guess. In February I bought—I paid Guess $100 for old corn that was in the crib; when he came to pay up these costs and expenses, he said he could n't let me have that money out of that corn, when he sold it; if I would allow him to sell it and keep the corn, he would pay me out of the corn that would come off this forty acres. I said 'All right.' That was in July, 1894. This $100 was to be on his interest in that piece of corn that was on that piece of land there—that forty acres. I paid him $100 on it. He was to deliver the corn any time we might agree on. He never delivered it to me.

"Q. How was it about the rye? A. While he was standing on the sidewalk talking about selling it to another party, the other party could n't buy it because he had to have a car-load, and he did n't have a car-load. As soon as he left I told Mr. Guess I would take the rye, and my son was sitting in the buggy; I bought his rye there—whatever he had on that place.

"Q. The rye he had on that place? A. Yes, sir; he was owing me, and I said to him I wanted the rye very bad; I says, I will pay you the money, or it can go on account. He says, 'It can go on account.'

Larkin v. Johnson.

"Q. What was said about the amount of rye there was there? A. I don't know anything about that; I don't remember what there was said about the amount.

"Q. What was said about the price? A. I asked him what he wanted for it. He said: 'I want the price whatever wheat is.' I said I had just bought a thousand bushels of wheat and paid forty-five cents for it; that was the price I was to pay him.

"Q. You bought the rye at forty-five cents, whatever it would pan out? A. Yes, sir.

"Q. How much was Mr. Guess owing you at that time? A. Between $150 and $160.

"Q. What evidence of indebtedness did you have against him? A. A note and the check I paid him for the corn.

"Q. What was this note given for? A. Spot cash loaned to Mr. Guess May 3, 1892.

"Q. When did you advance the other money to Mr. Guess, as you say, on the check? A. I think that was in February, 1894; amount, $100.

"Q. When did you first talk to him about the delivery of the $100 worth of old corn? A. He had sold his old corn, and he came to me and said he wanted me to wait until he could get the other forty matured; I could get it out of that; he had so much expense to pay it was impossible for him to pay that and me, too.

"Q. When did that conversation take place? A. That was some time in July—about the 15th, I think.

"Q. Was that the only conversation you had with him with reference to the purchase of the new corn? A. Yes, sir; that is all.

"Q. He was to deliver that corn to you? You were to pay him how much per bushel? A. I was to pay him the market price at the time it was delivered.

"Q. When was that rye to be delivered to you? A. As soon as he thrashed.

"Q. When it was brought in it was to be weighed and measured — ascertained how many bushels there were in it; then you were to allow him forty-five cents per bushel? A. Yes, sir.

"Q. Was that rye ever delivered to you? A. No, sir.

"Q. This transaction in regard to both the corn and the rye, as I understand, were verbal transactions? A. Yes, sir.

"Q. But at this time how much does he (Guess) owe you? A. About $150 or $160 and the interest.

"Q. Is he entitled to have any credit on the rye in the stack, the two stacks of rye, or is he entitled to any credit on this corn? A. Not until he delivers it.

"Q. You have given him no credit whatever? A. I do n't have to give him credit; but if I got the rye, of course I would give him credit for it.

"Q. You do n't know what the amount was? A. No, I do n't.

"Q. Then you have n't given him. credit for any definite amount? A. No, sir."

This is all of the testimony offered for the purpose of showing the purchase of the corn and rye by the defendant in error. The contract, as gathered from the testimony of both contracting parties, amounts to merely an executory agreement, and the corn and rye remained the property of the vendor until such contract should be executed. In determining whether the title has, or has not, passed by the contract, of course the primary consideration is one of intention. The corn was to be husked, weighed, delivered,. and the market price ascertained. The rye was to be thrashed, weighed or measured, and delivered. This was, according to the terms of the contract, all to be done by the vendor before he was entitled to his pay or credit on his indebtedness for the value of the corn and rye. There is no evidence to support the verdict. Franklin Guess was not divested of the title and ownership of the property by the agreement made.

The two rules on this subject, as stated by Lord Blackburn, are as follows:

"First. Where by the agreement the vendor is to

do anything to the goods for the purpose of putting them into that state in which the purchaser is to be bound to accept them, or, as it is sometimes worded, into a deliverable state, the performance of those things shall, in the absence of circumstances indicating a contrary intention, be taken to be a condition precedent to the vesting of the property. Secondly. Where anything remains to be done to the goods, for the purpose of ascertaining the price, as by weighing, measuring or testing the goods, (where the price is to depend on the quantity or quality of the goods,) the performance of these things also shall be a condition precedent to the transfer of the property, although the individual goods be ascertained, and they are in the state in which they ought to be accepted." (Benj. Sales, 4th Am. ed., § 364.)

In *Hughes v. Wiley,* 36 Kan. 731, 14 Pac. 269, the court say in the syllabus.:

"A contract for the sale of standing millet, which provided that it should be cut and stacked on the farm of the vendor, and within thirty days be measured and paid for, does not vest the title to the millet in the vendee until it has been measured and paid for according to the contract." (See also *Bailey v. Long,* 24 Kan. 95.)

There was a total want of evidence to support the verdict. The court erred in overruling the motion for a new trial. The judgment will be reversed, and the case remanded for a new trial.