The opinion of the court was delivered by
Horton, C. J.:
The only question before us is, whether the special findings of the jury are inconsistent with the general verdict. If they are, the former control the latter and the judgment was properly rendered. If they are not inconsistent with the general verdict, the ruling of the court was erroneous, as it.was its duty to enter judgment upon the verdict, or to have set aside the verdict and findings and *705 granted a new trial.' The trial court seems to have held, we judge, that the crops did not pass to the plaintiff under the contract of July 8, 1879; that plaintiff by such contract * holds only a claim against Berkshire for the value of the ci’ops; that by the sale he acquired only a jus ad rem and not a jus in re. If the title to the crops passed from Berkshire to plaintiff prior to the garnishee summons of July 11, 1879, plaintiff is entitled to a recovery. So long as Berkshire had the title and the right to control the property sold under the contract of July 8, 1879, it could be taken for his debts, notwithstanding any agreement he may have made to sell it, but in all cases of this character the intent of the parties controls, and if the parties intended a present vesting of title, it did in fact pass at once to the plaintiff, and that though the actual delivery was to be made at a subsequent date. In contracts of sale, the agreement is just what the parties intend to make it. The general finding of the jury finds every issue in favor of the plaintiff, and unless it appears from the special findings that it was not the intention of the parties to the contract of July 8,.1879, to vest the title in the plaintiff, such findings are not inconsistent with the general verdict, as by the general verdict we may assume that the parties intended a present vesting of the title, and that the property did in fact pass at the date of the contract at once to plaintiff. (Bailey v. Long, 24 Kas. 90.) It is true that the findings show that on July 11,1879, the wheat was standing in the stack undivided; that' the flax was in the field unharvested and undivided; that the corn was growing in the field unhusked and undivided. Yet, notwithstanding this condition of the crops, Berkshire had the power on July 8, 1879, to make a valid sale of any interest he had in the crops upon the farm leased by him, or that he expected to grow upon the farm at any time after the lease had been executed. He was not compelled to wait until the wheat was threshed and in the bushel, or the flax harvested and in the half-bushel, or the corn husked and in the crib. By the contract of July 8, 1879, if made in good faith and for a valuable *706 consideration — and there is no finding to the contrary — if it was the intention of the parties to the contract that a present vesting of title was to take place, the title did in fact pass at once, although the actual delivery was to be made to plaintiff upon a division and separation of the crops. As the intent of the parties controls, if their intention was clearly aud unequivocally manifested at the making of the contract of sale that the title should pass at once — and there is nothing in the special findings to conflict with such an intention —Berkshire had no title and no right to the control of the property after said July 8th, and the same could not be taken for his debts. The general finding of the jury is in effect that plaintiff was the owner prior to July 11, 1879, and as a consequence he was entitled to recover his damages for any conversion of the crops by the defendants.
We decide this case upon the theory that it was apparent' to the jury that it was the intention of Berkshire to transfer . the title to the plaintiff, and of the plaintiff to accept it at the date of the contract, and that they so found by their verdict. A party may make a valid sale of a crop growing on his-premises, or the grain that a field is expected to grow. (Hobart, 132.) Cl If rights are vested or possibilities are distinctly connected with interest or property, they may be sold.” (1 Parsons on Contracts, 5th ed., p. 523.) In Bellows v. Wells, 36 Vt. 599, it was held that a lessee might convey to his lessor all the crops which might be grown on the leased land during the term, and no delivery of the crops after they were harvested was necessary, even as against attaching creditors. See Hull v. Hull, 13 Reporter, 362.
The eighth special finding is not material in this case, as it appears from the answer of the defendants that prior to September 23, 1879, (the date of the commencement of this action), Wilson, the lessee, and Martin, to whom a part of the farm had been sub-let, had separated the crops and delivered! over to W. T. Pugh, as constable, the portion claimed by plaintiff. So there was in fact before the commencement of this action an.actual division and separation of the crops, and the *707 portion of the .crops to which plaintiff was entitled was turned over to Pugh to be sold and disposed of for the benefit of the defendant, M. G! Miller.
The judgment of the district court will be reversed, with direction to the court to render judgment upon the special findings and verdict in favor of the plaintiff.
All the Justices concurring.