## WILLIAM B. ORCUTT *vs.* JOHN B. MOORE.

Worcester. Oct. 5, 1881; Oct. 5, 1882. — Jan. 9, 1883. C. ALLEN, COLBURN & HOLMES, JJ., absent.

If the owner of a farm leases it to a person for a year, under an oral agreement, by which the lessee is to "carry on the farm at the halves," and is to leave at the end of the term as much hay as he found there at the beginning, and the lessor does not occupy the farm during the term, it cannot be held, as matter of law, that the lessor has, during the year, such a potential interest in the crops as to enable him to mortgage them.

The word "date" in the St. of 1874, c. 111, relating to the recording of mortgages of personal property, is not limited to the date stated in the *in testimonium* clause, but refers to the day of the delivery of the deed.

TORT for the conversion of personal property, attached by the defendant, a deputy sheriff, as the property of Franklin W. Orcutt and Abigail Orcutt.

At the trial in the Superior Court, before *Aldrich*, J., the jury returned a verdict for the plaintiff; and the defendant alleged exceptions, which appear in the opinion.

The case was argued at the bar in October 1881, by *S. Hoar*, for the defendant, and by *F. P. Goulding*, for the plaintiff ; and was reargued in October 1882, by the same counsel.

MORTON, C. J. Franklin W. Orcutt and Abigail Orcutt, being the owners of a farm in Concord, leased it " to one Bailey for a year, under an agreement by which said Bailey was to carry on the farm at the halves, and was to leave, on December 18, 1877, as much hay as he found there when he took the farm, December 18, 1876."

In October 1877, the said Orcutts made a mortgage to the plaintiff of " all the hay and fodder in my barn, one undivided half of all the grain, and one undivided half of all the beans." After the mortgage was made, and before any division had been made by Bailey, the defendant, who is a deputy sheriff, attached the hay and fodder in the barn on the farm, as the property of the said Franklin W. and Abigail Orcutt. At the end of the year, on December 18, 1877, Bailey, with the consent of the defendant, divided the hay and fodder, took away his portion, leaving the balance in the barn, which the defendant afterwards sold. The mortgagors did not occupy the farm during the year, and never had possession of the hay and fodder, except so far as the possession of Bailey was a constructive possession by them.

It is clear that the mortgage conveyed nothing to the plaintiff, unless the mortgagors, at the time it was made, had a present potential interest in the property described in it. *Low* v. *Pew*, 108 Mass. 347, and cases cited. *Thrall* v. *Hill*, 110 Mass. 328. The case therefore presents the question, whether it can be held, as matter of law, upon the facts stated in the bill of exceptions, that the mortgagors had any interest or title in the crops raised upon the farm leased to Bailey.

It is said in *Warner* v. *Abbey*, 112 Mass. 355: " In construing contracts for the cultivation of land at halves, it is impossible to lay down a general rule, applicable to all cases; because the precise nature of the interest or title between the contracting parties must depend upon the contract itself, and very slight provisions in the contract may very materially affect the legal relations of the parties. . . . . In some cases, the owner of the land gives up the entire possession, in which event it is a contract in the nature of a lease with rent payable in kind; in other cases, he continues to occupy the premises in common with the other party, or reserves to himself that right, and so a tenancy in common to that extent is created, and each is

entitled to the joint possession of the crops, or the possession of the one is the possession of the other, until division; or he may retain the sole possession of the land, and the other party may have merely the right to perform the labor and receive half the crops as compensation; or the two parties may become tenants in common of the growing crops, while no tenancy in common, as such, exists in the land." The decisions upon the subject in England, in this State, and in the other States of this country, are numerous and conflicting. We think the only general rule deducible from them is, that, as intimated in *Warner* v. *Abbey*, each case must depend upon the special terms of the contract, and the subject matter and the surrounding circumstances, in the light of which it is to be interpreted, the question being, as in the case of other contracts, what was the intention of the parties.

In *Walker* v. *Fitts*, 24 Pick. 191, the plaintiff leased to the defendant, by a lease under seal, the farm on which the plaintiff lived; the conditions of the lease were, that each party was to furnish one half of the necessary seed, Fitts was to sow and plant the tillage land and to deliver to Walker one equal half of the crops of every kind, properly and seasonably secured in his house, cellar and barn; the corn to be divided in the ear, and other grain to be threshed and then divided; and Fitts was to have the use of the east scaffold in the barn to put his grain upon. They were to occupy the land jointly. The lease shows in the clearest manner their intention that the specific products were to be divided between them and that they should be jointly owners of the crops; and the court held that they were tenants in common.

In *Delaney* v. *Root*, 99 Mass. 546, the plaintiff made an oral contract with the defendant to farm a lot of land upon shares, it being agreed that each was to furnish one half of the seed and manure; that the plaintiff should do the hand labor and the defendant the team work; and that the plaintiff should harvest the crops, which were to be divided equally between them. The action was for the conversion of the whole crop by the defendant. The Superior Court having ruled that it could not be maintained, this court held that the ruling was erroneous, Mr. Justice Hoar, in the opinion, saying that the parties were tenants in common of the crops. Here was a joint occupation

of the land, labor bestowed by each upon the cultivation, and a clear intention that the crop in kind was to be divided.

In *Cornell* v. *Dean*, 105 Mass. 435, the plaintiff hired a farm of the owners, from year to year, on shares, retaining one half of the proceeds of the place, giving the owners the other half, and having the exclusive occupation of the farm. The action being to recover pay for pasturing the defendant's cattle upon the farm, it was held that the Superior Court rightly refused to rule that the owners were tenants in common with the plaintiff of the crops and proceeds, and that the plaintiff could not maintain the action in his own name.

In *Warner* v. *Abbey*, above cited, the plaintiff agreed by parol with the defendant, the owner of land, to cultivate it on shares. The precise terms of agreement being in dispute, it was held that it was for the jury to determine whether they were tenants in common, and a verdict finding that they were not such tenants was upheld.

In *Darling* v. *Kelly*, 113 Mass. 29, one Chilson let land to the plaintiff on the terms that Chilson was to manure and plough it, that the plaintiff was to find seed, and to plant, cultivate and harvest the crops, that the crops, after they were harvested, were to be divided upon the land, and one half taken by Chilson for his own use and the other half taken by him to the house of the plaintiff. It was held that, if the jury found that the plaintiff was entitled to the exclusive possession of the land after it was ploughed and manured, he could maintain an action of trespass *quare clausum* against a stranger, who entered, and harvested and took away the crops, though he justified under a license from Chilson.

We think the result of the authorities is, that each case must depend on its own facts and circumstances, and must be governed by the intention of the parties manifested in their contract. Generally, where the contract is oral and not capable of being exactly proved, it must be left to the jury to determine what the contract is.

In the case at bar, the bill of exceptions does not disclose the precise terms of the agreement between the mortgagors and Bailey. It states, as the result of the oral agreement, that Bailey was to " carry on the farm at the halves," and was to

leave at the end of his term as much hay as he found there at the beginning. It is not stated whether this hay was to be hay raised on the farm, or other hay of equal quality; whether the crops were to be divided in kind, or whether Bailey could sell them, accounting for one half of the proceeds; and the evidence bearing on these questions is not stated. It is stated that the mortgagors did not occupy the farm, which is strong evidence that Bailey's occupation was intended to be exclusive.

The learned justice who presided in the Superior Court seems to have held that it is the general rule, that, under a contract to cultivate land on shares, the parties are, as matter of law, tenants in common of the crops. We are of opinion that this was erroneous. We do not decide that the parties to the contract were not tenants in common; but that, upon the case as presented to us, it cannot be held, as matter of law, that they were such tenants. It is for the jury to say what the contract was, and, under proper instructions, whether it made them owners in common of the growing crops.

The plaintiff contends that, whatever were the particular provisions of the lease, a lessor of land let on shares has such potential interest in the products before division, that he may sell or mortgage them. This presents the same question in another form. Whether he has any potential interest depends on the contract, which must be ascertained by the jury. If the contract is, that the specific products are to belong to the parties jointly, and are to be divided, he has such potential interest; if the contract is, that the lessee is to pay, as rent, a share of the crops or its equivalent, he would have no interest in any specific property so that he could sell it, though he has a claim for rent payable at the stipulated time.

The other objection to the mortgage, that it was void as against creditors, because not recorded within fifteen days after the date in the *in testimonium* clause, it being recorded on the day of its delivery, cannot be sustained. This precise point was decided in *Shaughnessey* v. *Lewis*, 130 Mass. 355, and we see no reason to overrule that decision.*        *Exceptions sustained.*

---

* By the St. of 1883, *c.* 73, § 1, "every mortgage of personal property shall be recorded within fifteen days from the date written in such mortgage, and

when such a mortgage is required to be recorded in two different places,
and is recorded in one of such places within said fifteen days, it may be
recorded in the other within ten days from the date of the first record."
And by § 2, "until a mortgage of personal property has been recorded as
provided in the preceding section, it shall not be valid against any person
other than the parties thereto, unless the mortgaged property is delivered to
and retained by the mortgagee; and any record of a mortgage made subse-
quently to the times limited in said section shall be void and of no effect."