STICKNEY *et al.* v. STICKNEY *et al.*

1. **Interest:** PAYMENT DELAYED BY LITIGATION. The payment of plaintiffs' mortgages was delayed by defendant's resistance. They provided for interest. *Held* that interest at the stipulated rate was properly allowed pending the litigation.

2. **Landlord and Tenant:** TITLE TO PROPERTY ON FARM. Where a tenant leases a farm and is to pay as rent one-half of all the products and stock raised thereon, he has a half interest in such products and stock, and it cannot be taken to satisfy the landlord's debts.

3. **Attachment:** SERVICE BY OFFICER DE FACTO. The service of an attachment by an officer *de facto* is valid as to the rights of other persons.

*Appeal from Benton District Court.*—HON. L. G. KINNE, Judge.

FILED, MAY 27, 1889.

ACTION in chancery to foreclose chattel mortgages. A decree was entered foreclosing the mortgages, and providing for the order of priority thereof. Defendant Lauderbaugh, whose mortgage is held to be last in the order of priority, appeals.

*Gilchrist & Haines*, for appellant.

*Nichols & Burnham*, for appellees.

BECK, J.—I. The plaintiffs in this action seek to foreclose two chattel mortgages, executed by defendant Walter Stickney, to indemnify plaintiffs against their liability as sureties for him. The mortgages are upon the same property, viz., live-stock, grain and hay on certain specified farms in Benton county, owned by the mortgagor. The mortgagor subsequently executed to plaintiffs another chattel mortgage upon the same property, to secure an indebtedness arising for money loaned, the amount being ascertained by an accounting afterwards had. Prior to the execution of these mortgages, Snock had brought suit against Walter Stickney, and seized, upon an attachment issued in the case, a part of the live-stock,—thirteen three-year old steers. Judgment in this case was entered after the mortgages above mentioned had been executed. It has been assigned to plaintiffs' mortgagor. The mortgagor being insolvent, plaintiffs took possession of the property under their mortgages, and caused it to be advertised for sale. Defendant Lauderbaugh, in his answer, alleges that the several mortgages of plaintiffs were executed for the purpose of hindering and delaying himself and other creditors of Walter Stickney; that the indebtedness secured by the mortgages has been paid by the proceeds of sales of mortgaged property; that he brought suit on certain promissory notes executed by Walter, and recovered judgment thereon. An attachment was issued in the action after the plaintiffs' mortgages were executed and levied upon the property described in the mortgages, and plaintiffs were at the same time garnished. On the same day, but after the levy of the attachment, Walter executed to the defendant a chattel mortgage upon the property attached. Defendant's answer is made a cross-bill, and he prays for a foreclosure and judgment which shall be prior to the claims of all other parties. It appears from the pleadings that See, a tenant of Walter, claims an interest in the property covered by the mortgages as a part owner. This interest is admitted by plaintiffs, and is denied by defendant Lauderbaugh. Two

successive agreements were entered into by all the parties, to the effect that the plaintiffs sell the property and hold the proceeds to be disposed of as the court may direct, the money realized therefor to stand in the place of the property.

II. Defendant Lauderbaugh insists that plaintiffs' mortgages should not be enforced, for the reason that they were given to defraud Walter Stickney's creditors. The evidence clearly shows that the first two were given to secure plaintiffs, who became sureties for Walter for *bona-fide* debts. The third mortgage was executed for a sum greater than was really due, for the reason that the parties had made no settlement of the particular transactions out of which the indebtedness arose. We think that the district court's conclusions as to the good faith of the mortgages and the amount due thereon are correct.

III. The defendant thinks the court erred in allowing interest on these mortgages. All of them provided for interest, and we know of no reason why the decree should not allow it. Surely, defendant ought not to be heard to complain. By his resistance to plaintiffs' claim he has delayed their payment. The plaintiffs ask for nothing, as to interest, which is not provided for in the mortgages.

1. INTEREST: payment delayed by litigation.

IV. Defendant insists that See had no interest in the property attached, and therefore the judgment in his favor is not warranted by the facts. We think differently. See leased a farm of Walter Stickney, and was to pay one-half of all the products, including all crops and fruits grown on the farm, and all hogs, cattle and calves raised on it. Of course, one-half was the landlord's, and one-half the tenant's. It would indeed be a harsh rule which would deny him an interest in the property, and make it all subject to the landlord's debts. No such rule exists.

2. LANDLORD and tenant: title to property on farm.

V. Counsel insist that the levy of the attachment in the Snock case did not bind the property, for the reason that it was all owned by Walter, and the sheriff

treated it as property in which See had an interest under the lease. But, if counsel's views as to the law on this point should be correct in case Walter did own the whole of the property,—which we are not prepared to adopt,— the fact upon which these views are based, namely, that Walter owned all interest in the property, is not established by the record. See surely had an interest in the property under his lease.

VI. Counsel argue that, as the officer to whom the attachment was delivered by the clerk for service, and who served it as a "special deputy," was not such an officer, or an officer at all, under lawful appointment, his acts were void. We think the record fails to show that he was not a duly appointed deputy. But, if he was not, he did hold the writ, and he did seize the property, and make return of his doings as an officer. He was an officer *de facto*, if not *de jure*. It would surely be a harsh rule which would defeat litigants, and overthrow liens, on the ground that one serving writs did not in fact lawfully hold the office of deputy, or was not appointed to serve the writ. The rights of litigants, relying upon the acts of executive officers, are better protected. The person having color of right to the office of deputy-sheriff, to whom a writ is delivered by the clerk of the court issuing it, and who makes service and return thereof, though he be not an officer *de jure*, is recognized by the law as an officer *de facto*, and his acts are valid as to the rights of other persons. The foregoing views dispose of all questions in the case. The judgment of the district court is

AFFIRMED.