ROBERT RIDDLE, Appellant, v. S. E. Dow, *et al.*, Defendants, W. C. DICKEY & COMPANY, Interveners.

THE THOMPSON NATIONAL BANK, Appellant, v. S. E. Dow, *et al.*, Defendants, W. C. DICKEY & COMPANY, Interveners.

**Mortgage Upon Undivided Crop Rent:** GARNISHMENT. A mortgage made by a lessor upon his share rent interest in the crop raised by his tenant, which is undivided and in the possession of the tenant, the share being payable out of the very grain raised on the leased premises, is paramount to a garnishment of the tenant, effected after the giving of the mortgage. *Rees v. Baker*, 4 G. Greene, 461; *Townsend v. Heuberger*, 45 Iowa, 670; *Atkins v. Womeldorf*, 53 Iowa, 150; *Howard v. Kyte*, 69 Iowa, 307; *Drake v. Railway Co.*, 70 Iowa, 63, and *Orcutt v Moore*, 134 Mass. 48, *distinguished*.

DEEMER, J., concurring specially.—This is true, because in Iowa a mortgage attaches to after-acquired property, while a garnishment creates no lien.

GRANGER, J., and ROTHROCK, C. J., dissenting.

*Appeal from Crawford District Court.*—HON. CHARLES D. GOLDSMITH, Judge.

MONDAY, APRIL 13, 1896.

PROCEEDINGS by garnishment to appropriate shares of crops grown on leased premises, which were to be paid as rent, in satisfaction of judgments against the landlord. A creditor of the landlord intervened, claiming the shares specified under a mortgage executed by his debtor. The two causes were tried together by the court. A judgment was rendered in each in favor of the intervener, and the plaintiff appeals.—*Affirmed*.

*Nash & Phelps, W. R. Green,* and *Theo. F. Myers* for appellants.

*J. P. Conner* for interveners, appellees.

Robinson, J.— The two cases are submitted together. The controlling facts are the same in both, and the district court was authorized to find the facts to be substantially as follows: In the year 1891, the plaintiffs recovered judgments against the defendant, S. E. Dow, which are still unpaid. The defendant Dow, rented to J. H. Griffin and J. R. Griffin, by verbal agreement, certain land for the year 1892, and was to receive from them as rent, one-third of the crops which should be raised on the leased premises, to be delivered in Dow City, about three miles distant from the land. The tenants occupied the premises, and proceeded to raise crops thereon. On the second day of September, 1892, Dow made to the interveners, W. C. Dickey & Co., a promissory note for the sum of four hundred dollars, payable on the first day of the next November, and to secure its payment executed a chattel mortgage upon the property, described as follows: "My undivided one-third interest in all the crops of every kind and description grown during the season of 1892," on land which was fully described, and which was that leased to the Griffins, as stated. At that time no division of the crops grown had been made. The small grain, consisting of wheat and oats, was in stack, and the corn was in the field, and all were in the possession of the tenants. After the mortgage was given, but on the same day, the tenants were garnished under executions issued on the judgments, and their answers were taken. The answers admitted that the garnishees were under obligations to deliver a share of the

crops raised by them, but showed that no division had been made. Subsequently nearly one hundred and twenty bushels of wheat, three hundred and twenty bushels of oats, and more than two thousand bushels of corn were delivered by the tenants to the sheriff under the garnishments. A stipulation was then made under which the grain so delivered was sold, and the proceeds of the sale were paid into the court, to be appropriated by the judgments which should be rendered in the cases. The district court adjudged that the lien of the mortgage was paramount to the rights acquired by the garnishment proceedings, and awarded the proceeds of the grain to the inteveners.

I. It may fairly be inferred from the record before us, that the lease made by Dow gave to the tenants the sole possession of the leased premises during the term of the lease, the exclusive right to possess and hold the crops which should be grown, until they should be divided, and the right to make the division. The division of the crops actually made by the tenants and the delivery of a share thereof to the sheriff, were voluntary on the part of the tenants, in fulfillment of the requirements of their lease. No question as to notice of the rights of any party is involved in this case. The question we are required to determine, is whether the mortgage given by the landlord to the interveners, was effectual to create an interest in the crops grown upon the leased premises, superior to the rights acquired by the judgment creditors of the landlord by virtue of the garnishments. It is earnestly contended that the landlord had no interest in the crops until they were divided and his share was delivered; that he could not mortgage a share of them until it was set apart to him; and that, as the tenants were garnished before that was done, the judgment creditors acquired rights which were paramount to those created by the

mortgage. It is undoubtedly true that the authorities generally hold that, where a tenant on shares has exclusive possession of the leased premises, the legal title to the entire crop grown thereon and the right to possess it are vested in him until the share which is to be delivered as rent is separated from the remainder of the crop, and some authorities hold that such ownership is exclusive. It will be found, however, that in most cases of that character the landlord, or person claiming through him, was endeavoring to assert a right of possession as against the tenant before a division of crops had been made, or that there had been a conveyance of the land before a maturity of the crops, and a claim made that the landlord's share did not pass by the conveyance. But the rules which control in such cases are not applicable to this case. To ascertain the fair scope and intent of a decision, and the force which should be given it, attention must be paid to the very questions which required determination. The case of *Rees v. Baker*, 4 G. Greene, 461, may properly be regarded as the leading one in this state for the doctrine that the exclusive ownership of growing crops, of which a share is to be delivered as rent, is in the tenant, but no question of that kind was involved in that case. The landlord had leased to the tenant land on shares. The tenant plowed and cultivated it, and sowed fall wheat upon it. The wheat was frozen out during the winter, and, in the spring following, the landlord, without the permission of the tenant, took possession of the land, and sowed it with spring wheat. The court held that the landlord was a trespasser, and that the tenant could recover the value of his labor in preparing the ground for a crop. What was said in regard to the ownership of a crop, had one been raised by the tenant, was not relevant to any issue in the case. The facts involved in *Townsend v. Isenberger*, 45 Iowa, 670,—the next case

decided by this court, which is alleged to support the doctrine in question, were substantially as follows: The owner of land leased it to a tenant, who was to deliver for its use one-third of the grain he should raise upon it. Before the crops were planted, a creditor of the landlord levied a writ of attachment upon the land. A judgment in the action was afterwards obtained, and before the crops matured, the land was sold without redemption, and a sheriff's deed therefor executed. After the attachment was effected, but before the crops were planted, and before the judgment was rendered, the landlord assigned the lease, and the controversy in the case was in regard to the ownership of the share of the crop which was set apart by the tenant as rent. What was said in regard to the ownership of the tenant was designed to show that the rent had not accrued, and was not payable until after the purchaser at the sheriff's sale had acquired title to the land; hence that the case was controlled by the rules that rent reserved by lease, and not accrued, passes by a conveyance of the land, and that a purchaser under execution sale is entitled to the rent accruing or falling due after the execution of the sheriff's deed. It is clear that those rules have no application in this case. The cases of *Rees v. Baker*, and *Townsend v. Isenberger*, were referred to in *Atkins v. Womeldorf*, 53 Iowa, 150 (4 N. W. Rep. 905), where it was said that, although it be true that the right of property in a crop grown on shares was, as between the landlord and tenant, in the latter until it was divided, yet that it was "the property of the tenant in the sense that the landlord may not enter upon the premises and take possession of the crops without consent of the tenant." The case of *Howard County v. Kyte*, 69 Iowa, 307 (28 N. W. Rep. 609), merely decided that a writ of attachment against the property of a landlord cannot be levied

on growing crops, of which he is to have a share as rent, for the reason that the officer has no right to take possession of the crop, and the proper method of reaching the right of the landlord to the rent is by garnishment. It was said that: "The rent reserved being a share of the crop, is the same as when the rent is reserved in money, so far as the rights of the landlord or his creditors to take possession are involved, and the tenant is in no manner in default until he refuses to deliver the share of grain, in compliance with his contract." But it was not said that the interest of the landlord, in the crops raised, was no more than it would have been had the rent been payable in money. In no case which has been called to our attention, has a share of the crop to be delivered as rent, been treated, in all respects, as though it were money rent. That it should not be, is clear, on principle. When rent is to be paid in money, the obligation of the tenant is discharged by the payment of the specified amount of money, from whatever source obtained; and if a share of the crop to be grown, or its equivalent, is to be paid as rent, the requirements of the lease will be satisfied by the delivery of the share itself, or by delivering an equivalent—as crops of a kind and quality equal to the share designated. But when the rent is to be paid by delivery of a share of the crop raised on the leased premises, and no option is given to deliver an equivalent, the obligation of the tenant can be satisfied only by a delivery of the specified share of the crops grown on the leased premises. Nor can he be compelled to pay anything but the stipulated share, unless he fails to deliver it according to the terms of his contract. *Johnson v. Shank,* 67 Iowa, 116 (24 N. W. Rep. 749).

In a proper case, a specific performance by the tenant of his contract to deliver a share of the crops as rent, would be compelled by a court of equity.

Whether it would be compelled in all cases, we do not
decide.   The rule in regard to ordinary contracts for
the sale of personal property, is that specific perform-
ance will not be decreed where compensation in dam-
ages will afford complete and satisfactory relief.   It
was intimated, however, in *Parker v. Garrison*, 61 Ill.
250, that the delivery of a share of grain reserved as
rent might be enforced as the execution of a trust.   In
that case the tenant had agreed to deliver as rent, one-
half of the crops which he should raise on the leased
premises, but it was to be paid in corn.   He refused to
deliver the stipulated share, and did not separate it
from the remainder of the crop, but intended to sell
all of it.   He was enjoined from selling or otherwise
disposing of the grain at the suit of the landlord.
The court said that the landlord had an interest in
the corn; that "it justly and equitably belongs to
him"; that "the defendant, Garrison, had received from
him the entire consideration of it,   *   *   *   and it
was his plain duty to deliver the corn to the com-
plainant."  That case is an authority for the theory
that the landlord has an interest in the crop which he
is to have a share of as rent, before a division is made;
which is more than a mere right to a landlord's lien,
and which the courts will protect.   It should be
remembered in this connection, that the rule that the
legal title to crops, a share of which is to be delivered
as rent, and the right to their exclusive possession,
are in the tenant until a separation and delivery of
the rent share, is fully recognized by the supreme
court of Illinois. *Alwood v. Ruckman*, 21 Ill. 200;
*Dixon v. Nicolls*, 39 Ill. 384; *Sargant v. Courrier*, 66 Ill.
245.   It is true it was said in *Drake v. Railway Co.*, 70
Iowa, 63 (29 N. W. Rep. 804), that a landlord has not
such an interest in the growing crops of his tenant as
will enable him to maintain an action against a per-
son who injures the crops.   But the nature of the

landlord's claim to the crops in that case is not shown. The point was decided without discussion by the court, apparently on the authority of *Townsend v. Isenberger*, *supra*. The case cannot, therefore, be regarded as in conflict with the views we now express. That a lease may be assigned as security, and the right to recover the rent reserved be thereby given to the assignee, was decided in *Watson v. Hunkins*, 13 Iowa, 548. This rule was followed in *Lufkin v. Preston*, 52 Iowa, 235 (3 N. W. Rep. 58), and 57 Iowa, 28 (10 N. W. Rep. 290). In the opinion filed on the first appeal in the case last cited, the cases of *Rees v. Baker* and *Townsend v. Isenberger*, *supra*, were referred to, but the court said: "It has never been held that a landlord may not assign his interest in the lease, and thus invest his assignee with the right to secure the rent when it is in a condition to be set apart." The leases considered in that case provided that the landlord should have one-half of the crop in the field at harvest time. The leases were assigned as collateral security, and afterwards, in March, and again in May, an execution was levied upon an undivided half of the corn growing upon the leased premises, as the property of the landlord. A sale thereof was made, and when the corn matured, one-half of it was gathered by the purchaser, by permission of the tenants. It was held that the assignments, if not fraudulent, invested the assignee with the right to one-half of the corn at harvest time. In *Haywood v. O'Brien*, 52 Iowa, 537 (3 N. W. Rep. 545), it was held that the assignment of a lease gives to the assignee the right to a landlord's attachment. The case of *Stickney v. Stickney*, 77 Iowa, 699 (42 N. W. Rep. 518), was for the foreclosure of chattel mortgages upon live stock, grain and hay, on certain farms. One of them was occupied by a tenant who had agreed to pay one-half of the products, including all crops

and fruits grown upon the farm, and hogs, cattle and calves raised on it. It did not appear that there had been any division of the property, but the court said of that in which the tenant claimed an interest, "Of course, one-half was the landlord's and one-half the tenant's." That a landlord has an interest in crops of which he is to have a share as rent, before separation and delivery of the share, which he may mortgage or sell, has been affirmed in other states. This was expressly held in *Howell v. Pugh*, 27 Kan. 702. The particulars of the tenancy do not fully appear in that report, but the statements of the case made on an earlier appeal, which is reported in 25 Kan. 97, with those made on the second appeal, show that the tenant was to pay as rent, one-half of the wheat, and one-third of the corn and flax raised on the leased premises during the term, the wheat and flax to be delivered in the half-bushel, and the corn in the crib. On the eighth day of July, 1879, the landlord sold his share of the crops, and three days later suits were commenced against him, and the tenant was garnished. At that time the flax and corn were growing in the field, and the wheat was in stack, but no division had been made, and the question to be determined was whether the sale by the landlord was valid and effectual as against the garnishment. The only material difference between that case and this is, that in the Kansas case, the sale was absolute, while in this it was conditional. In *Potts v. Newell*, 22 Minn. 561, it was said that the right of the landlord to a share of the crop which was to be paid him as rent, was as clearly assignable as the right to receive a specified rent in money; and a mortgage of such share, made before its separation from the remainder of the crop, was sustained.

The interest of the landlord in the share of crops to be delivered by the tenant, where the latter has the

legal title and right of possession, until separation
and delivery, is similar to that of the tenant, in the
share he is to receive, when possession of the crop is
retained by the landlord until division. In *Yates v.
Kinney* (Neb.) (27 N. W. Rep. 132), it appeared that
the tenant, Kinney, was to deliver to his landlord, as
rent, one-third of the crops to be raised on the leased
premises, but the crops were to be considered the
property of the landlord until they were divided.
The tenant executed mortgages upon two-thirds of
the crops before they were divided, and while they
were growing. The court said: "It is evident that
Kinney had some interest in the crops. The fact,
that the extent of that interest depended upon his
compliance with the terms of his lease, would not
deprive him of the right to sell or mortgage it." The
court also held that, where the tenant had the right
to assign his lease or sell his share of the crop raised
on the leased premises, it logically followed that the
same rights or interests might be mortgaged. In
*Hammock v. Cheekmoore* (Ark.) (3 S. W. Rep. 180), it
was said, that a party who works land for a
share of the crops raised thereon, under an agree-
ment, by which the landlord owns the entire
crops until division, "may sell or mortgage his
contingent interest, just as he may assign his
wages to be hereafter earned." The doctrine of these
cases was recognized in *Meacham v. Herndon* (Tenn.)
(6 S. W. Rep. 741). It was said in *Horsley v. Moss*
(Tex. Civ. App.) (23 S. W. Rep. 1115), that a land
owner who furnished the land, teams, food for teams,
and tools, for which he was to receive one-half the
crops raised on the land, had more than the land-
lord's lien on the crops; that he had a specific interest
in the crops themselves. In *Ferrall v. Kent*, 4 Gill (Md.)
209, it was said of a lease which provided that the ten-
ant should give to the landlord one-half of everything

made on the leased premises, and carry all the crops
to market, and pay the landlord one-half the proceeds
after they were sold, that it vested in the parties to it
a joint interest in the crops. It is well-settled that, in
this state, valid mortgages of personal property, not in
existence until after the mortgage is given, are valid.
It was said in *Lawrence v. McKenzie*, 88 Iowa, 440 (55
N. W. Rep. 505), that the "general rule is that, in the
absence of statutory provisions to the contrary, any
personal property which is capable of being sold, and
which has an actual or prospective existence, may be
mortgaged." That rule is in force in this state. *Manu-
facturing Co. v. Robinson*, 83 Iowa, 568 (49 N. W. Rep.
1031). In the case last cited it was said that the power
to sell an account for money due cannot be ques-
tioned; that an interest in such an account less than
the unqualified ownership of it may be transferred,
and that a valid mortgage may be given on a claim
for money not earned. When the mortgage in ques-
tion was given, the small grain grown upon the leased
premises was matured and in stack, and the corn must
have been nearly, if not quite, fully grown. The
description in the mortgage was sufficient, and when
the division was made the mortgage attached to the
landlord's share, thus ascertained. *Johnson v. Rider*,
84 Iowa, 53 (50 N. W. Rep. 36); *Lufkin v. Preston*, 52
Iowa, 235 (3 N. W. Rep. 58). See, also, *Melin v. Rey-
nolds*, 32 Minn. 52 (19 N. W. Rep. 81); *Potts v. Newell*,
22 Minn. 562; *Zehner v. Aultman*, 74 Ind. 24; *Sims v.
Mead*, 29 Kan. 125. In *Potts v. Newell, supra*, it was
held that a mortgage upon "all the right, title, and
interest" of the landlord in a crop to be grown, of
which he was to have a share as rent, attached the
instant the share was set apart, and was superior
to the levy of an execution made after the
mortgage was executed, but before the share
was separated. It is the law in this state that no

lien is obtained by the process of garnishment, but only a right to proceed against the garnishee personally. *Clark v. Raymond*, 86 Iowa, 667 (53 N. W. Rep. 354). According to numerous decisions of this court, the mortgage in question must have attached to the landlord's share at the moment it was ascertained and set apart, if it did not attach before; and, since the garnishment did not create a lien, the mortgage became a first lien upon the property in controversy. The case of *Orcutt v. Moore*, 134 Mass. 48, is relied upon as in conflict with the rule we have announced, but we do not think that it is. The lease involved in that case provided that the tenant, Bailey, should "carry on the farm at the halves," and he was to leave at the end of the term "as much hay as he found there when he took the farm." In commenting on the lease, the court said: "It is not stated whether this hay was to be hay raised on the farm, or other hay of equal quality; whether the crops were to be divided in kind, or whether Bailey could sell them, accounting for one-half of the proceeds; and the evidence bearing on that question is not stated." The court said that on the case thus made it could not be said, as a matter of law, that the parties to the lease were tenants in common. When read in connection with the facts to which the court refers, its conclusion appears to be in harmony with the views we have expressed, for in this case it is not shown that the obligation of the tenant to deliver a share of the crops as rent could be discharged by paying an equivalent in crops grown elsewhere than on the leased premises, or in money. On the contrary, it appears that the lease was designed to give each party a share of the crops actually grown on the leased premises. That the landlord may sell the rent for the land at any time is not to be questioned. If he can sell all, he can sell a part, especially when it is readily

ascertainable; and if he can make an absolute sale, it follows that he can make a conditional one. The mortgage in controversy was a conditional sale of the landlord's share of the crops which had been grown and was to be delivered according to the terms of the lease. What right or interest the mortgage would have conveyed had a share of the crops grown not been delivered, need not be determined. The conclusions which reason and authority demand, are, that the landlord had a mortgagable interest in the crops in controversy, when the mortgage was given; that the interest was made definite and certain when his share was separated and determined; that the mortgage fully attached to that share when it was thus ascertained, if it had not been operative before; that, as the mortgage was given before the garnishment was effected, the latter was subject to the rights conferred by the former. It follows that the judgments of the district court were right, and they are therefore AFFIRMED.

DEEMER, J. (concurring specially).—I agree with the minority opinion on the question as to the interest of the landlord in a share of the crops grown on the leased premises. I do not think he has such a vested or potential interest in the share to be set apart to him as rent, that he may make a mortgage which will presently carry the undivided one-third of the property growing upon the land. But I do think that he has a lien upon the crops which may finally ripen into a title to an aliquot part thereof, and that, when the third is delivered to, or set apart for the landlord in accordance with the terms of the lease, then his title becomes perfect. Now, it is held in this state that one may make a mortgage of property to be acquired in the future which will be valid, and which I think will take precedence of a garnishment of him who holds the

property for the mortgagor.   In the case of *Scharfen-burg v. Bishop*, 35 Iowa, 60, we said: "By the strict rule of the common law, it is doubtless true that a party could not mortgage property not then in *esse*, so · as to vest a title in the mortgagee when the property should come in *esse*.   But at civil law we could.   *   *   *   Courts of equity, and under practice, courts of law also, will recognize the rights of such mortgagee, and enforce them against all persons having notice of them."   If it does not at the common law amount to a technical legal mort-gage, it is at least an equitable mortgage.   Of course, it is necessary that such future-acquired prop-erty shall be capable of identification.   See, also, on this same point *Brown v. Allen*, 35 Iowa, 306; *Fejavary v. Broesch*, 52 Iowa, 88 (2 N. W. Rep. 963); *Dunham v. Isett*, 15 Iowa, 284; *Stephens v. Pence,* 56 Iowa, 257 (9 N. W. Rep. 215); *Phillips v. Both*, 58 Iowa, 499 (12 N. W. Rep. 481); *Hughes v. Wheeler*, 66 Iowa, 641 (24 N. W. Rep. 251).   In the case last cited we held that a mortgage drawn with the intention of covering future-acquired property which was in existence, but not the property of the mortgagor, will be valid as to such property when acquired.   And we also held that the mortgagee under such a mortgage was entitled to the possession of the property as against a purchaser from the mortgagor.   There is no question but that the description of the property in controversy is suf-ficient to cover the property.   Indeed, the property is specifically described as that growing upon certain land during the year 1892.   It could scarcely be more definitely described, and it would be difficult to make a description which would more clearly indicate that the mortgagor intended to convey his interest in that crop, no matter when acquired.   It follows then, that as soon as the property was set apart by the tenant, the mortgage attached to it, and that the mortgagee

then had a perfect lien upon, and was entitled to the property, or to its proceeds when sold, under the stipulation in this case.

The garnishing creditor acquired no greater rights against the mortgagee than the mortgagor would have had, had he brought the suit, nor are his rights against the garnishee, the tenant, any different than those held by the garnishee against the mortgagee. In a contest between the garnishee, who was the tenant, and the mortgagee, there ought to be no doubt about the outcome. When the property was set apart by the tenant, who was garnished by a judgment creditor of the landlord, who was the mortgagor, the mortgage immediately fastened itself upon it, and the tenant held it as the property of the landlord, subject to the mortgage made to the interveners, Dickey & Co. The proceedings by garnishment gave the plaintiffs no lien upon the property. They simply succeeded to the rights of the landlord, Dow, against the tenant, in and to the property raised upon the leased premises, and they have no other or greater rights against the interveners, Dickey & Co., than Dow would have had. I desire to say, again, in order that my position may not be misunderstood, that no question as to sufficiency of description, or notice to the creditors in the garnishment, is made. Moreover, no such question could be in the case, because the mortgagor was not in possession when he gave the mortgage. In the case of *Jessup v. Bridge*, 11 Iowa, 572, we held a mortgage of the future earnings of a railway company, was prior and superior to the rights of judgment creditors of the railroad company, under garnishment proceedings. In view of these well-settled rules, it seems clear to us, that the mortgage of the interveners, is superior to the claim of plaintiffs, in their garnishment proceedings, and that it is not necessary to determine what interest a landlord has in

growing crops, of which he is to receive a share, as rent, for the use of his lands.   There is no occasion to determine whether the intervener's rights under their mortgage, are equitable or legal, for they pleaded the facts necessary to entitle them to recover, and proved, without objection, all that is required to give them the relief they prayed.   An error, as to the choice of forum, will not, under our reformed procedure, defeat them.

Another rule tends to support the interveners in their claim.   The mortgage under which they claim contained the usual covenants of warranty, and correctly described the property intended to be conveyed. Now, it seems to be well settled that if a mortgagor who has no title, or whose title fails, afterwards acquires it, it inures to the mortgagee.   Jones, Chat. Mortg. section 101.   Now, when the property was set apart by the tenant in accordance with the terms of the lease, the title vested in the landlord, and immediately inured to W. C. Dickey & Co., the mortgagees. Under the doctrine announced in the minority opinion, there was nothing the judgment creditor could get until the property was set aside by the tenant, for the landlord had no interest in it.   Neither the mortgagee nor the judgment creditor by virtue of his garnishment had any claim against, right to, or interest in the property until set apart.   When set apart, their respective interests in it, if they had any, immediately vested; but, as the mortgage was first in point of time, it should be given priority.   This is the most favorable attitude for the judgment creditors, and it seems to me that it gives them no standing in this controversy.   But as it is well settled that a garnishment creates no lien, and that the mortgage does; even when the property is subsequently acquired, it follows as a necessary conclusion that the mortgagee should be protected.   On these grounds I

vote to affirm, and as the majority reach this conclusion, although by a somewhat different course of reasoning, it follows that the judgment is AFFIRMED.

GRANGER, J. (dissenting).—The majority opinion closes with a holding that reason and authority demand a conclusion that the landlord had a mortgageable interest in the crops in controversy when the mortgage was given.  Regarding the conclusion as a clear misapprehension of authority, and of at least doubtful support in reason, I dissent from it.  The proposition, briefly stated, is:  Where a landlord leases land, and is to receive for his rental one-third of the grain raised thereon, to be delivered at another place than on the land, and there is no relationship between the landlord and tenant, as that of tenants in common, has the landlord such an interest in the specific grain he will be entitled to receive that he can mortgage the same, and the mortgage be effective, before the grain is set apart for him?  I think the authorities are, in this state, on principle, conclusive of the question.  I do not see how language can be more so.  In *Rees v. Baker*, 4 G. Greene (Iowa), 461, it is true the question is but incidentally involved, but it is there said, speaking of the rental:  "This share was in the nature of rent, and, until it was delivered, the exclusive ownership of the growing crop was in the tenant."  I cannot imagine an interest a landlord could have except ownership and a *lien*.  That he has the latter no one doubts.  The case puts the ownership *exclusively* in the tenant until set apart.  *Townsend v. Isenberger* is also cited in the majority opinion. I regard the case as a very conclusive test of the question, and its facts should be well in mind.  It presents fairly the question whether or not a landlord has any interest in a growing crop, that is assignable.  In that case the landlord assigned his lease to the plaintiff,

which would convey to the plaintiff every assignable interest he had. After the landlord had made such assignment, his land was sold on execution, and the case settled the question whether anything passed to plaintiff by the assignment of the lease. Speaking of that question, it is said: "The share of the crop reserved by the lease to the landowner is to be regarded as rent. The owner of the land acquired no property in the part of the crop reserved for rent until it was set apart to him by the tenant. The ownership of the tenant continued until that time." If the conclusive language of *Rees v. Baker* was to be doubted as authority because not applicable directly to the issues, the question was certainly involved in *Townsend v. Isenberger*, and the same conclusive language is there used, and *Rees v. Baker* is cited in support of it, as well as other authorities. The majority opinion evades the force and language of that opinion by assuming that what is said was designed to show that the rent had not accrued, and was not payable until the purchaser at the sheriff's sale had acquired title to the land. I must and do insist that the point ruled is that, before the rental was set apart, the landlord had no property therein that he could assign. The contention of ownership arose after the grain was set apart in a granary for the legal owner, so that the question was fairly presented whether or not the assignment was of validity to transfer title when made, or became afterwards effective, when the title would pass by the setting apart. It is there held that the assignee took no property by the assignment, not because the rent had not accrued when the purchaser took his title to the land, but for no other reason than that the "owner of the land acquired no property in the part of the crop reserved, until it was set apart to him." It is in the same connection said, "The ownership of the tenant continued until that time." If the

right of the landlord to assign the crop is not denied in that case, for the sole reason that he had no owner- ship as a basis for it, and that the tenant was the owner, then it is not the province of language to express such a holding. The doctrine of these cases is followed in *Atkins v. Womeldorf,* 53 Iowa, 150 (4 N W. Rep. 905), also cited in the majority opinion; and in fixing a rule for the protection of a landlord, so that his interest may not be lost to him to benefit the creditors of the tenant, it distinguishes, but in no way denies the rule as stated in *Townsend v. Isen- berger.* It gives to the landlord a protection against the seizure by such creditors because of his landlord's lien. The case recognizes the rule of the other cases. Mr. Justice Rothrock wrote the opinion in the case of *Atkins v. Womeldorf,* and also in *Howard County v. Kyte,* 69 Iowa, 307 (28 N. W. Rep. 609). It is there said: "When land is rented on shares, the tenant is the exclusive owner of the crop while growing, and the landlord has no control over it, nor title to the part of the crop reserved as rent, until it is set apart to him." It cites the former cases, and then says: "It is true that the landlord has a lien for the rent reserved, but he has neither title nor right of possession of the crop while growing." It is beyond a peradventure that the cases fix the right of a landlord in a growing crop as a lien merely, and not an ownership. It is true that in some of the cases the language relied on is used by way of illustration or argument, but it is significant in this: that at all times, whether treating of the rights of the landlord to assign the crop reserved as rent, or of its use in other ways, the same thought or rule is observed,—that his interest is a lien, and not an ownership that he can convey. In *Drake v. Railway Co.,* 70 Iowa, 63 (29 N. W. Rep. 804), crops had been injured by defendant, and the question of the plaintiff's right to recover damages therefor was

presented, he being the landlord; and it is said: "A landlord has no such interest in the growing crop of his tenant as to enable him to maintain an action against a person who injures the crop." This holding is based on *Townsend v. Isenberger*, and the reason for the holding must be that the landlord had no property interest to authorize the action. It is the law of Iowa, in view of the majority opinion, that a landlord has such a property interest in the growing crop that he may assign or mortgage it; but if some person shall destroy that interest he may not recover, for the reason that he has no interest that will permit it. I think ours is the only state in the Union to sustain such a rule. Our own holdings ought to settle this question, I think, independent of reason or other authorities. If they announce a bad rule, we should meet the situation frankly, and overrule them, and not attempt to distinguish on principle where there is no difference.

It is said that a lease may be assigned, and the right to recover the rent reserved, be given to the assignee. The rule is not doubted. It is no more than to say that the landlord may assign his right. That he can assign his right to the rent, whether payable in money or other property, is not, to my knowledge, questioned. The assignee can take the place of the assignor. When the rent is payable, he can receive it or enforce payment, precisely as the landlord could have done. But that is not the question we are considering. It may further be conceded, for the purposes of the case, that he can mortgage the debt,—that is, the chose in action. But that does not mean that he can pledge the specific property with which the debt is to be paid, until it is his. I may also concede that a landlord may pledge the rental in the growing crops, and that, as between himself and his pledgee, if he afterwards acquires the title, the

pledge will be valid. But not more so than if one should sell or mortgage property in which he confessedly had no interest. If he should afterwards acquire the title, it would inure to the benefit of the vendee or mortgagee. This is the rule as to real estate. Code, section 1931; *Rice v. Kelso,* 57 Iowa, 115 (7 N. W. Rep. 3) (10 N. W. Rep. 335). As to personal property, see Jones, Chat. Mortg. (4th Ed.) section 101. I submit that this court has held, in the cases cited, that a landlord may not assign his interest in a growing crop; that he has no interest therein that could be made the subject of a levy; and that he has no such interest therein that, if it is destroyed, he can maintain an action for damages; and that all such holdings are, in terms, based on the single fact that he has no ownership in the crop until it is set apart. If this is true, I am led to inquire, what is there to which a mortgage can attach. The majority refer to *Parker v. Garrison,* 61 Ill. 250. It is, in my judgment, without the slightest bearing on the question. In that case the tenant was insolvent, and, after the rental was due, he was removing it, and refusing to set apart the rental, according to the contract. The action was, to enforce specific performance of the contract, by injunction. It simply held, that the holding of the property after the time for delivery, was a trust. That was, because the tenant had, after the debt was due, refused to deliver the crop in payment, as he had agreed to do. It is said, in the opinion, that the rental share justly and equitably belonged to the landlord, and that is true; and the suit was, to compel a specific performance, so that he might have the legal title. The majority omit to quote from the same case, the significant remark, as a basis for equitable cognizance, as indicating the thought of the court, as to the legal title, that "the remedy by replevin, at least, would have been doubtful and

uncertain, from the difficulty of showing a legal title in the specific property, there having been no delivery;" and the corn was, at the time, undivided. In *Woodruff v. Adams*, 5 Blackf. 317, in considering the question of trespass to the real estate, it is held, that the landlord's right was to receive a portion of the crop, after severance, and on other land—which is precisely this case—as he was not jointly interested with the producer in the crop while it was growing. It is there said: "His share was in the nature of a rent, and until that was delivered, the exclusive ownership of the crop was in the raiser of it." In *Howard County v. Kyte, supra*, this court said: "The rent reserved, being a share of the crop, is the same as when the rent is reserved in money, so far as the rights of the landlord or his creditors to take possession are involved." The words, because of the nature of the case, are used with a limitation as to persons, but they strengthen the oft-repeated holding that the landlord has no ownership. It means that the landlord's right in the growing crop is the same as his right to money to be paid as rent, so far as concerns his right to sell or pledge it. This exact question has received consideration by the supreme court of Massachusetts in *Orcutt v. Moore*, 134 Mass. 48. I think that here also the majority have perverted the reasoning and conclusion of the case. After a careful discussion of this and kindred questions, speaking of the interest of the landlord in the crop, it is said: "Whether he has any potential interest depends on the contract, which may be ascertained by the jury. If the contract is that the specific property is to belong to the parties jointly, and is to be divided, he has such potential interest. If the contract is that the lessee is to pay as rent a share of the crops, or its equivalent, he would have no interest in any specific property so that he could sell it, though he has a claim

for rent payable at a stipulated time." It seems to me that the language is not susceptible of misconstruction. Its conclusiveness is strengthened by the facts and reasoning. In that state, if the contract is such that the landlord and tenant are tenants in common, the rule is different. No such relationship is claimed in the case at bar. It is held in *Sunol v. Molloy*, 63 Cal. 369, that the landlord and tenant were tenants in common, and that a mortgagee of the tenant could not hold the entire crop. Such a rule is not to be disputed. The fact of the tenancy in common brings the case in line with the Massachusetts case.

The only conflict of authority that I have discovered, is because of holdings in Kansas and Minnesota. In *Howell v. Pugh*, 27 Kan. 702, some language, used rather argumentatively than otherwise, in considering the principal question in the case, recognizes the right of a landlord to sell his rental share of the crop. The case is somewhat in doubt as to the precise nature of the contract, but what is said, is without a citation of authorities, and gives to the landlord a property in the growing crop, which is certainly against the express holdings in this state, and the great weight of authority. In the Minnesota case (*Potts v. Newell*, 22 Minn. 561), what is said as to the right to mortgage the rental share of the crop is without reference to authorities on the subject. It seems to be the thought of the opinion that the legal title would not pass until the share was separated, which is the recognized rule; and that the landlord would have the right to receive the share in the future when separated, which is also the rule. It is also said that the right of the landlord "was as clearly assignable as the right to receive a specified rent in money, and in case of assignment the title to the third of the wheat would, upon its being set apart, vest at once in the assignee, precisely as it

would vest in the assignor, if no assignment was made." These rules are nowhere disputed, and they constitute the reasoning for the conclusion. The opinion leaves no inference what was the interest to be mortgaged, before the title, or ownership, passed. The case as clearly holds that the money to be paid as rent could as well be mortgaged as the grain, for the conclusion seems to rest on the right to assign the chose in action. The opinion is, in its reasoning, in accord with general authority to the effect that the landlord has no ownership of growing crops before there is a separation. The case of *Hammock v. Cheekmoore* (Ark.) (3 S. W. Rep. 180), is cited by the majority. The case expressly holds that the relation of landlord and tenant did not exist, and the rule of the case is undoubtedly correct. However, the majority have omitted to notice this conclusive language of the case against their theory of the law: "If the terms of the contract had been such as to indicate an intention to create the relationship of landlord and tenant, * * * the title to the crop would have been in Stewart, the tenant, subject to the landlord's lien for rent, and the landlord could have maintained no action against Stewart at law for converting any part of it." The case holds that Stewart was a laborer for wages, and not a tenant, and it fully supports the holdings in this state as to there being no ownership of the crop in the landlord. It fixes his right in the crop before separation, as that of a lien for rent, as I maintain this court has done. The case fully supports my view in this: that the landlord was to furnish the team, utensils, etc., to raise the crop, and Stewart was to do the work and receive a share of the crop for his labor. Stewart sold a part of the crop, and the holding is, that the title to the crop was in the landowner, and Stewart could not sell a part of it. The case places Stewart, under his contract to take a share of the

crops for his wages, precisely as that case does, and other cases do, the landowner, when he agrees to take a share of the crop for his rent. In one case the rent is to be paid by the tenant, and in the other the wages by the landowner. In either case it is a debt. The person who is to pay owns the money or property with which the debt is to be paid, until payment. The mere fact that a debt is payable in a specific article, either of money or of other property, does not invest the creditor with ownership in the specific property, until his contract gives him the right to demand payment, if even then. I am not disposed to pursue the discussion further. I am confident of the conclusion that our holdings are conclusive against the rule announced by the majority, and these holdings are aided by the great weight of authority. It is said, in substance, in the majority opinion, that the attachment by garnishment did not effect a lien on the grain before it was set apart, and that, when so set apart, if not before, the lien of the mortgage attached, and gave it priority. I am understanding this to mean, as a legal proposition, that if A is attached as garnishee in a suit by B against C, and he has property belonging to C in his possession, C may afterwards mortgage it, and the mortgage would be a prior lien. I am much disposed to doubt the rule, but desire to reserve my opinion on that question and that stated in the concurring opinion. In view of the conclusion of the majority, the case must stand affirmed, and I need not now take time to examine the latter question.

ROTHROCK, C. J., concurs in this dissent.